[No. B143831. Second Dist., Div. Three. June 12, 2003.]

RICHARD HERR, Plaintiff and Appellant, v.
NESTLÉ U.S.A., INC., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The nonpublished portions are enclosed by double brackets. The portions to be published are as follows: the beginning of the opinion through Nestlé's Contentions; part 2 of the Discussion relating to Nestlé's Contentions; and the Disposition.

## COUNSEL

Pine & Pine, Norman Pine, Beverly Tillet Pine; Kenneth A. Rivin; and Alvin Pittman for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, George W. Abele, Heather A. Morgan; Ford & Harrison, Norman A. Quandt and Kari Haugen for Defendant and Appellant.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Nestlé USA, Inc. (Nestlé) appeals a judgment in favor of plaintiff Richard Herr (Herr) following a jury trial of an age discrimination suit resulting in a $5,163,600 verdict. Nestlé also seeks review of an order denying its motion for judgment notwithstanding the verdict (JNOV), and a postjudgment attorney fee award of $1,788,159.

Herr cross-appeals, contending the trial court erred in granting nonsuit on his punitive damages claim.

The issues presented include the sufficiency of the evidence to support the age discrimination claim, whether the trial court should have allowed the punitive damages claim to go to the jury, whether the damages and attorney fee award are excessive, and alleged evidentiary and instructional errors.

We find the verdict is supported by the evidence and perceive no error in any of the trial court's rulings. Therefore, the judgment and orders are affirmed.

In the published portion of the opinion, we address Nestlé's contention that the trial court erred in enjoining it pursuant to the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) from discriminating against employees age 40 and over.

The UCL defines unfair competition as including "any *unlawful*, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200, italics added.) The California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) makes it an unlawful employment practice for an employer to engage in age discrimination. (Gov. Code, § 12940, subd. (a).)[1] An employer which practices age discrimination has an unfair competitive advantage over employers who comply with the FEHA because older workers frequently are more highly compensated than their younger colleagues. Further, the UCL's remedies are cumulative to the remedies available under the FEHA. (Bus. & Prof. Code, § 17205.) Therefore, injunctive relief under the UCL is an appropriate remedy where a business has engaged in an unlawful practice of discriminating against older workers.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

 a. *Evidence establishing Nestlé's preference for younger employees.*

In 1985, the Carnation Company, located in Los Angeles, was acquired by Nestlé S.A., a Swiss company. For a number of years, Carnation continued to operate as it had in the past. However, in the early 1990's, Nestlé S.A.'s chief executive officer and chairman of the board of directors, Helmut Maucher (Maucher), decided to bring Carnation and Nestlé's other American companies under one roof, resulting in the formation of Nestlé U.S.A.

At a management meeting in October 1990, Robert Mason, an executive vice-president, presented Nestlé's views regarding its Carnation employees. Mason said Carnation employees were older employees, with an average age of 43 and with 15 or 17 years of service and it was Nestlé's "policy to promote young, energetic people in management positions." Mason remarked that Carnation "had a lot of deadwood in it" and instructed that staff "see about getting rid of the deadwood." One of the individuals present at this meeting was James Person, who was then over 43 years of age and serving as Carnation's director of environmental affairs. Person testified he was shocked to hear that his employment at Nestlé would be limited because of his age.[3]

In 1988, Carnation's EEO (equal employment opportunity) policy stated the company was committed to "equal opportunity in all matters of employment without consideration of a qualified individual's race, sex, *age*, color,

---

[1]"Age" refers to the chronological age of any individual who has reached his or her 40th birthday. (Gov. Code, § 12926, subd. (b).)

[2]The evidence is set forth in the light most favorable to the judgment. (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1 [102 Cal.Rptr. 795, 498 P.2d 1043].)

[3]Person was fired by Nestlé in 1992.

religion, national origin . . . ." (Italics added.) The 1993 policy statement, the first one issued after the Nestlé transition, conspicuously omitted "age" as an enumerated category.[4] Age was restored as a protected category two years later, after Nestlé was sued for age discrimination.

On December 1, 1993, Maucher, who headed Nestlé, issued a memorandum entitled Objectives 1994. With respect to human resource policies, Maucher directed that Nestlé "[c]ontinue hiring, identifying and developing young people to have in the long-term enough resources for future management."

 b. *Evidence establishing Nestlé's failure to promote Herr was age-related.*

In early 1989, at the age of 41, Herr took a position at Carnation as an internal auditor. During the interview process, Herr was assured that Carnation promotes from within. One year later, Herr was promoted to a manager position. This was Herr's final promotion. The transformation of Carnation to Nestlé was under way.

In 1991, Herr received a positive performance evaluation, with an "E" (exceeded expectations), the company's highest rating, in the areas of organizing, controlling and communication, and an "M" (met expectations) in all other areas. In 1992, Herr received an even better review, garnering "E" ratings in nine distinct areas: controlling, utilization of time, budget and expense control, presentation skills, quantity of work, self control, dependability, cooperation, and quality of work. Herr was then ready to move on within the organization.

In 1992, when the position of director of financial reporting became available, Herr, then 45 years old, applied for it. Herr had the training and qualifications for the job, including over 20 years of experience at Mobil and Carnation. However, Nestlé gave the position to Greg Geane, age 31, who possessed less than 10 years of business experience.

In the summer of 1992, in an attempt to become more well rounded professionally, Herr also applied for two lateral manager positions involving financial operations for Nestlé foreign trade. Although Herr had substantial experience qualifying him for those positions, they went to Dan Stroud, age 32, and Ruth Ause, age 31. As contrasted with Herr's two decades of experience, Stroud had only two and a half years of finance experience. Further, Ause had received unfavorable performance reviews, and recently

---

[4]Nestlé attributed the omission to a typographical error.

had been demoted due at least in part to performance reasons. Mary Lou Wallace, age 31 and a director of finance, rejected Herr and testified she did not care what Herr's performance history had been.[5]

In the summer of 1993, Herr's supervisor, Barbara Coad, age 43, was removed by Jack Mulhern, senior vice-president in finance, from her position as director of sales financial services, a position she had held since 1985. As director, she supervised about 40 people; in her new position, she supervised none. A year and a half later, Coad left the company.

Herr was well qualified for Coad's director position. He had worked directly under Coad for three years and had experience in all aspects of her job. The job description specified a "minimum of ten years' business experience," and that a CPA or MBA was preferred. Herr met these requirements. However, Herr was not interviewed for the position. Instead, Mulhern selected 32-year-old Dan Stroud, who lacked 10 years' business experience and had neither a CPA nor an MBA degree.

Herr then expressed interest in the position left open by Stroud's promotion. Herr was told the job already had gone to Dawn Striff, who was 29 years old and had been with Nestlé only a short time. Wallace, who decided to promote Striff, admitted that Herr met all the qualifications for the position. However, Herr was denied an opportunity to interview for the position, which was not even posted, contrary to Nestlé's own policy.

Despite repeated inquiries, Herr was never told why he was passed over for these various positions.[6]

Herr began to feel depressed, unwanted and hopeless and spoke with Mike Mayhall, who had hired Herr at Carnation. Mayhall told Herr, that he, Herr, "wasn't one of Jack [Mulhern's] boys. I wasn't someone in my early thirties that could be promoted throughout the organization. He told me that my responsibility was going to be to train the young managers of Nestlé. And he also told me that Jack had made a comment to him that he was getting a little bit long in the tooth."[7]

Between January 1992 and January 1996, Mulhern promoted five people to the position of manager or higher. None was 40 or over; they ranged in age from 28 to 35.

[5]Wallace admitted that during her tenure at Nestlé, while Herr was still there, of the 12 positions she filled, none went to anyone over the age of 40.
[6]According to Nestlé's director of human resources, Kelly Diehl, the failure to inform Herr of the reason he was passed over violated the company's career development program.
[7]Mayhall, at age 48, had spoken to Mulhern about becoming a division president. Mulhern told him he was "a little long in the tooth" to be talking about promotion.

Herr continued to seek advancement at Nestlé. He learned of openings for the positions of controller in Nestlé Brand Food Service, and director of financial reporting. Herr was qualified for both the controller and director positions and previously had interviewed for the director position, but now was refused an interview for either one. The controller position went to 31-year-old Greg Geane and the director position went to 32-year-old Dave Frasher. Herr asked Tim Alders in the human resources department why he wasn't able to get an interview. Alders responded that Eric Bredeson, the hiring manager, "had made a comment to him that this would be my last promotion."

Around October 1993, Herr met with Mulhern to discuss opportunities for advancement at Nestlé. Mulhern told Herr "there were going to be a lot of opportunities opening up in the future." Mulhern stated he would reassign Herr to a different position as manager of special projects, reporting directly to Mulhern, to give Herr a broader background to better qualify him for future openings. In December 1993, Herr moved into his new position under Mulhern as manager of special projects.

However, Herr's new position did not lead to advancement. Instead, in February 1994, after just two months, Mulhern gave Herr a layoff notice and told him his position, the one that was to lead to new opportunities, was being eliminated. The layoff notice was accompanied by a summary of termination benefits, requesting Herr to sign a settlement agreement and release of all claims, including age discrimination, in order to receive the termination benefits.

Before Herr's scheduled departure date, Mulhern offered him a temporary position as a manager in the sales financial services department, a position that was itself slated for elimination. That job became available because one DeMartini was not performing satisfactorily.[8] Mulhern told Herr the assignment would last six to twelve months, at which time Herr would be terminated.

Herr performed well in his new job. His 1994 performance review indicated he achieved or exceeded expectations. In the summer of 1994, Herr's then supervisor, Stroud, moved to another position, creating an opening for a new director of sales financial services. Mulhern did not even consider Herr for the job, although Mulhern admitted Herr was doing a very good job. Instead, Mulhern's candidates were Jim Bidwell, Carol Scoville and Anne Witler Woods, all of whom were in their early 30's.

---

[8]DeMartini, who was in his early 30's, was not laid off, despite his failure to perform satisfactorily.

In February 1995, Mulhern gave the position to Woods, even though he was aware that Woods, like Stroud, her predecessor, lacked the minimum requirements for the job, including 10 years of business experience.

Herr learned of Woods's promotion to director of sales financial services and felt shocked and betrayed. He asked Mulhern whether he was passed over because of his age. Mulhern did not respond. Herr told Mulhern he couldn't take it anymore and there was nothing he could do but leave. Mulhern replied, "I knew you would . . . this is the straw that broke the camel's back."

On March 22, 1995, Herr gave written notice of his resignation, effective April 14, 1995. Woods asked Herr to remain for another eight to 12 weeks to complete a certain project. Herr agreed, hoping to salvage his career by demonstrating his value to the company. He continued to do an excellent job.[9] After that project ended, Herr finally left Nestlé on June 30, 1995.

### 2. *Proceedings.*

Herr filed suit against Nestlé on February 7, 1997. The operative second amended complaint alleged two causes of action: age discrimination under the FEHA and unfair competition (Bus. & Prof. Code, § 17200).[10]

### a. *Jury trial on Herr's age discrimination claim.*

Herr's age discrimination claim was tried to a jury. Numerous witnesses were called, including Herr, Mulhern, Person, Mayhall, Wallace, Stroud, Alders and Bredeson, referred to *ante*. After Herr rested, Nestlé moved for nonsuit on the issues of constructive discharge and punitive damages.[11] The trial court granted Nestlé's motion for nonsuit solely as to punitive damages.

The jury returned a special verdict, finding on a nine-to-three vote that Nestlé intentionally discriminated against Herr on the basis of his age and

---

[9]Woods testified Herr did an excellent job for her. Further, a thank you note from Woods to Herr, which was received in evidence at trial, stated: "Richard, I want to thank you for your tireless dedication. *I know I would not have survived these past few months without your help.* Your [*sic*] an admirable man. Best wishes, Anne." (Italics added.)

[10]he second amended complaint also included a cause of action for age discrimination based on a theory of disparate impact. However, that cause of action was eliminated on summary adjudication.

[11]Although Nestlé's counsel characterized the motion for nonsuit as a request for a directed verdict, that was a misnomer. A motion for directed verdict lies after all the parties have completed their presentation of evidence in a jury trial (Code Civ. Proc., § 630, subd. (a)), as contrasted with a nonsuit motion, which may be made after the plaintiff's presentation of his or her evidence. (Code Civ. Proc., § 581c, subd. (a).)

that Herr was constructively discharged because of his age, and awarded Herr $5,163,600 in damages.

### b. *Court trial on the UCL claim.*

The following day, the trial court, by stipulation sitting without a jury, heard the unfair competition claim. Following argument, the trial court permanently enjoined Nestlé "from discriminating on the basis of age, 40 and over, in promotions of employees"; directed Nestlé to issue to all employees a repudiation of the 1994 objectives memorandum wherein Maucher directed that Nestlé "[c]ontinue hiring, identifying and developing young people to have in the long-term enough resources for future management"; and ordered dissemination of the final judgment, including the repudiation, to all Nestlé, USA employees.

### c. *Subsequent proceedings.*

On May 25, 2000, the trial court entered judgment.

Nestlé moved for JNOV and for new trial. Nestlé contended, inter alia, there was no substantial evidence to support the verdict, the evidence did not support an injunction on the UCL claim, the damages were excessive and were the product of passion and prejudice, evidentiary and instructional errors denied Nestlé a fair trial, and at a minimum the damages should be reduced.

On July 19, 2000, the trial court denied Nestlé's posttrial motions, finding, inter alia, the evidence "showed a continuous pattern of age discrimination," and the damage award was within the realm of generally accepted standards and represented an acceptance of the testimony of plaintiff's expert and a rejection of the defense expert.

On September 11, 2000, the trial court awarded Herr attorney fees in the sum of $1,788,159.38 pursuant to the FEHA and Code of Civil Procedure section 1021.5, the private attorney general statute.

Nestlé filed a timely notice of appeal from the judgment and from the order denying its motion for JNOV. (Cal. Rules of Court, rule 3(a) & (c).)[12] Herr filed a timely notice of cross-appeal from the judgment, seeking review of the order granting nonsuit on the punitive damages claim. (Cal. Rules of

---

[12]Although Nestlé's August 17, 2000 notice of appeal also purports to appeal the denial of its motion for new trial, an order *denying* a new trial is not appealable. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 123, p. 188.)

Court, rule 3(e).) Nestlé thereafter timely appealed the trial court's postjudgment order re attorney fees. (Code Civ. Proc., § 904.1, subd. (a)(2).) The various appeals were consolidated.

## NESTLÉ'S APPEAL

### CONTENTIONS

Nestlé contends: the trial court erred in denying its motion for JNOV on the age discrimination and unfair competition claims; the trial court erred in denying the motion for new trial; the trial court erred in not significantly remitting the damages; and the attorney fee award should be reversed or substantially reduced.

### DISCUSSION

[[1. *Trial court properly denied Nestlé's motion for JNOV on the age discrimination claim.*]]*

2. *Trial court properly enjoined Nestlé under the UCL from engaging in age discrimination against employees age 40 and older.*

a. *No merit to Nestlé's contention it was entitled to JNOV on the UCL claim; the UCL claim was decided by the court, not the jury, and therefore a JNOV does not lie.*

■ As a preliminary matter, Nestlé contends the trial court should have granted JNOV on the unfair competition claim. The argument fails.

As indicated, after the jury returned its verdict on the age discrimination claim, the trial court, by stipulation sitting without a jury, heard the UCL claim. The JNOV procedure, by definition, applies to jury trials, and a trial judge should grant a motion for JNOV where the jury returns a verdict which is not supported by substantial evidence or by reasonable inferences to be drawn therefrom. (Code Civ. Proc., § 629; *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377].) Because the instant UCL claim was decided by the court, not the jury, Nestlé's contention that it was entitled to JNOV on the unfair competition claim is groundless.

However, moving beyond the procedural flaw in Nestlé's contention, we turn to the substantive issue of whether the trial court properly enjoined Nestlé under the UCL from "discriminating on the basis of age, 40 and over, in promotions of employees."

*See footnote, *ante*, page 779.

b. *Age discrimination in violation of the FEHA is an unlawful employment practice which may be enjoined under the UCL; the UCL's remedies are cumulative.*

█ Business and Professions Code section 17200 defines unfair competition as including "any *unlawful,* unfair or fraudulent business act or practice . . . ." (Italics added.) The UCL authorizes injunctive relief to prevent unfair competition. (Bus. & Prof. Code, § 17203.)[15]

Here, the evidence established that it was Nestlé's practice to promote young people in management positions to the detriment of their more mature colleagues, such as Herr. The FEHA makes it an unlawful employment practice for an employer to engage in age discrimination. (Gov. Code, § 12940, subd. (a).) It follows that injunctive relief under the UCL is an appropriate remedy where a business has engaged in an unlawful practice of discriminating against older workers.

Nestlé contends it did not engage in unlawful age discrimination and therefore the unfair competition claim must fall together with the age discrimination claim. This argument fails because, as discussed in the previous section, there is substantial evidence to support the jury's determination Nestlé did discriminate against Herr on account of his age.

Nestlé also contends the UCL is intended to protect consumers and competitors, not employees, and therefore Herr's remedy for age discrimination is limited to the FEHA. The argument is meritless. Business and Professions Code section 17205 specifically provides, "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are *cumulative to each other and to the remedies or penalties available under all other laws of this state.*" (Italics added.)

Further, an action for injunctive relief under the UCL may be brought "by any person acting for the interests of itself, its members or the general public." (Bus. & Prof. Code, § 17204.) "The courts in California have consistently upheld the right of both individual persons and organizations under the unfair competition statute to sue on behalf of the public for injunctive relief as 'private attorney[s] general,' even if they have not themselves been personally harmed or aggrieved. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 929 [216 Cal.Rptr. 345, 702 P.2d 503];

---

[15]In addition to injunctive relief to prevent unfair, unlawful or fraudulent business acts or practices, the UCL authorizes restitution or disgorgement of money or property unlawfully obtained. (Bus. & Prof. Code, § 17203; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545].) This case solely concerns the injunctive aspect of the UCL.

*Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 70-73 [164 Cal.Rptr. 279].)" (*Consumers Union of United States, Inc. v. Fisher Development, Inc.* (1989) 208 Cal.App.3d 1433, 1439 [257 Cal.Rptr. 151] [action against developer of adult community to enjoin discrimination in housing].) A fortiori, Herr, who was personally aggrieved by the age discrimination practiced at Nestlé, had the right under Business and Professions Code section 17204 to sue as a private attorney general to enjoin Nestlé from engaging in unlawful employment discrimination.

Further, although Nestlé's counsel argued below that age discrimination is an "intra company" matter which is not injurious to competitors or consumers, the trial court properly rejected that argument. Actual injury to competition is *not* a required element of proof of a violation of Business and Professions Code section 17200. (*People ex rel. Van de Kamp v. Cappuccio, Inc.* (1988) 204 Cal.App.3d 750, 760 [251 Cal.Rptr. 657]; Stern, Bus. & Prof.C. §17200 Practice (The Rutter Group 2003) ¶ 3:17, p. 3-3.)

Further, Business and Professions Code section 17200 has been applied in the employment context. In *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706], the Supreme Court held unlawfully withheld overtime wages may be recovered as restitution in a UCL action. (*Id.* at p. 173.) The failure to pay statutorily mandated overtime wages constitutes unfair competition in that an employer which fails to pay overtime wages gains an unfair advantage over its competitors.

By a parity of reasoning, age discrimination likewise implicates unfair competition. It is self-evident that older workers, who have worked their way up the ranks, frequently are more highly compensated than their younger colleagues. Thus, an employer that practices age discrimination may have an unfair competitive edge over employers that comply with the FEHA. Therefore, an employer which engages in age discrimination in violation of the FEHA is subject to a prohibitory injunction under the UCL.

For these reasons, the trial court properly enjoined Nestlé under the UCL from engaging in age discrimination in violation of FEHA.

[[3. *No merit to Nestlé's contentions relating to the denial of its motion for new trial.*

[[HERR'S CROSS-APPEAL

[[CONTENTIONS

[[DISCUSSION]]*

DISPOSITION

The judgment, the order denying the motion for JNOV, and the order awarding attorney fees to Herr, are affirmed. Herr shall recover his attorney fees incurred in responding to Nestlé's appeal. Herr shall also recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied July 3, 2003, and the petition of appellant Nestlé U.S.A., Inc., for review by the Supreme Court was denied September 10, 2003.

---

*See footnote, *ante*, page 779.