[No. B190031. Second Dist., Div. Seven. July 25, 2007.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
RICHARD J. GLAIR, Defendant and Appellant.

814

COUNSEL

Richard J. Glair, in pro. per., for Defendant and Appellant.

Rockard J. Delgadillo, City Attorney, Zna Portlock Houston, Assistant City Attorney, and Hugo S. Rossitter, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**PERLUSS, P. J.**—The City of Los Angeles applied for and, following a bench trial, obtained a workplace violence protective order on behalf of its employee Celia Mann pursuant to Code of Civil Procedure section 527.8.[1] The order enjoins Richard J. Glair for a period of three years from coming within 100 yards of Mann and within 10 yards of any entrance to Queen Anne Park, where Mann works as the park's director. On appeal Glair contends there was no evidence to support the court's finding he poses a threat to Mann. We dismiss the appeal for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Petition for a Section 527.8 Injunction*

On January 26, 2005 the city filed a petition pursuant to section 527.8[2] for a permanent injunction prohibiting Glair from engaging in violence or threatening violence against Mann. The city also sought ex parte and obtained a temporary restraining order against Glair pending trial on its petition for a permanent injunction.

### 2. *The Trial on the Petition*

According to the testimony at the trial on the petition, Glair, who lives next door to Queen Anne Park in Los Angeles, had been a frequent park visitor. In early 2004 Glair became increasingly upset at Mann's lack of oversight of the park and her frequent absences. He began questioning the park's administrative assistants several times a day as to whether Mann was in her office at the park. If he was told she was not there, he would become angry and inquire as to her whereabouts and when she would return. If he was told she was there, he would leave without speaking to her.

When Mann confronted Glair directly to determine the basis for his inquiries, Glair became hostile, telling her she was a "terrible director," "your community and staff hate you" and "I've been watching . . . I know what you're doing." Although that was Glair's only direct encounter with Mann, Glair continued to ask park employees about Mann's whereabouts and complain about Mann in e-mails to her superiors. In November 2004 he informed Mann's superiors that he had looked inside Mann's parked car, saw

---

[1] Statutory references are to the Code of Civil Procedure.

[2] Section 527.8, subdivision (a), provides in part, "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee . . . ."

law books and postulated her apparent law school studies were interfering with her ability to do her job. When he did not hear from park officials about his complaints, he continued to monitor Mann's whereabouts and question her subordinates about her.

Mann testified that, as Glair's anger toward her escalated, she became extremely frightened and feared for her safety. Glair began watching her at the park, often "four times a day." When she was not at the park, she heard from her subordinates he had asked about her on numerous occasions in a very hostile tone. She became so frightened she moved to a different office at the park and either rented a car (so Glair could not identify her car) or had herself driven to work by other people. Park employees had to escort Mann to and from her park office. Mann testified she feared Glair would harm her.

Glair testified he never threatened Mann, either directly or indirectly. He simply chronicled her absences as part of a legitimate complaint about a public employee. Glair acknowledged he had sent e-mails to Mann's supervisors (not to Mann) complaining about her work and describing materials he saw while looking through the window of her parked car but explained he never threatened Mann's safety, and, apart from that single encounter when he accused her of being a poor director, never even spoke to Mann.

### 3. *The Injunctive Order*

On April 19, 2005, following a bench trial, the court granted the petition for a permanent injunction, finding that Glair had become "obsessed with Mann" and that his escalating hostility reasonably put Mann in fear for her safety. The court entered the order the same day and directed the city to give notice of entry of the order. The city inadvertently failed to comply with the formal notice requirement, although there is no question Glair had actual notice of the injunction.

### 4. *Posttrial Motions*

On October 17, 2005, six months after entry of the permanent workplace violence protective order,[3] Glair filed a notice of motion and motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.[4] On October 27, 2005 he apparently served the city with a document entitled

---

[3] Because the city had inadvertently failed to give notice, Glair had until October 17, 2005, the first business day following the 180th day after entry of the order, to file his motion. (See §§ 659, par. 2, 629.)

[4] The October 17, 2005 motion is not included in the record on appeal but is reflected on the docket summary. Neither the city nor Glair disputes that Glair timely filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial on October 17, 2005.

notice of continuance of that motion to December 30, 2005. On December 30, 2005 the court continued the hearing on the motion to January 20, 2006. On January 10, 2006 Glair filed a second document, also entitled motion for judgment notwithstanding the verdict or, in the alternative, new trial, which recites that the motion had originally been filed on October 17, 2005. The reason Glair filed this second motion, which was also calendared for hearing on January 20, 2006, is not apparent from the limited record on appeal. The court considered the October 17, 2005 motion on its merits and, on January 20, 2006, denied the motion.[5] Glair filed a notice of appeal from the January 20, 2006 order denying his motion for judgment notwithstanding the verdict.

## DISCUSSION

1. *Any Purported Appeal from the Underlying Workplace Violence Protective Order Is Untimely*

Glair's notice of appeal, filed on March 16, 2006, nearly 11 months after the court's April 19, 2005 order granting the petition for a permanent restraining order, specifically states Glair's intent to appeal solely from the January 20, 2006 order denying his motion for judgment notwithstanding the verdict. Nonetheless, citing the principles requiring liberal construction of the notice of appeal (Cal. Rules of Court, rule 8.100(a)(2))[6] and stating "it is reasonably clear" Glair "intends to appeal from the judgment," the city urges we construe the notice of appeal to encompass not only the denial of his motion for judgment notwithstanding the verdict, but also the entry of the underlying permanent workplace violence protective order. (See § 904.1, subd. (a)(6) [order granting or dissolving injunction appealable order].)

■ A notice of appeal from a judgment or other appealable order must be filed no later than 180 days after entry of the judgment or order (rule 8.104(a)), even if a valid motion for judgment notwithstanding the verdict or new trial motion has been filed. (See rule 8.108(a), (c) [filing valid motion for judgment notwithstanding verdict or new trial motion does not extend time to appeal judgment to a date more than 180 days after entry of judgment].) Because Glair's March 16, 2006 notice of appeal was filed more than 180 days after the April 19, 2005 injunction, we have no jurisdiction to consider an appeal from that order. (§ 906; *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 662 [125 Cal.Rptr. 757, 542 P.2d 1349] [appellate

---

[5] The January 10, 2006 motion was not timely filed. Because no reporter's transcript from the January 20, 2006 hearing was provided with the record on appeal, we cannot be certain that in ruling on the merits the trial court denied Glair's original motion, but we presume the court did not decide the merits of an untimely motion. (See Evid. Code, § 664 [presumption that official duty has been regularly performed].)

[6] References to rule or rules are to the California Rules of Court.

court has no jurisdiction to review untimely appeal]; *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 219 [64 Cal.Rptr.2d 37] [policy of liberal construction of appeal does not confer power on court to consider untimely appeal]; see also *Lombardi v. Citizens Nat. Trust etc. Bank* (1955) 137 Cal.App.2d 206, 208–209 [289 P.2d 823] [pro. per. litigants held to same standards as those represented by counsel: "A litigant has a right to act as his own attorney [citation] 'but, in so doing, should be restricted to the same rules of evidence and procedure as is required of those qualified to practice law before our courts; otherwise, ignorance is unjustly rewarded' "]; *Harding v. Collazo* (1986) 177 Cal.App.3d 1044, 1056 [223 Cal.Rptr. 329] [pro. per. status does not exempt litigant from rules of procedure].)

### 2. *We Have No Jurisdiction To Consider the Merits of the Order Denying the Motion for Judgment Notwithstanding the Verdict*

■ Apparently anticipating the timeliness obstacle to an appeal from the underlying workplace violence protective order, Glair expressly limited his notice of appeal to the January 20, 2006 order denying his motion for judgment notwithstanding the verdict. (See § 904.1, subd. (a)(4) [order denying motion for judgment notwithstanding verdict is separately appealable].) Glair's limitation on the scope of his appeal, however, does not eliminate the barrier to our reaching the merits of his objections to the workplace violence protective order. Although the issue here is not one of timeliness—Glair's notice of appeal from the postjudgment order would be timely if his motion for judgment notwithstanding the verdict were valid (see rule 8.108(c)(2) [time to appeal from order denying motion for judgment notwithstanding verdict governed by rule 8.104, which requires notice of appeal to be filed on or before 60 days after mailing of notice of entry of order or 180 days after entry of judgment or appealable order])—Glair's posttrial motion was not properly one for judgment notwithstanding the verdict because the city's request for a permanent workplace violence protective order was tried to the court. (§ 629 [motion for judgment notwithstanding verdict applicable to jury verdict]; see, e.g., *Herr v. Nestlé U.S.A., Inc.* (2003) 109 Cal.App.4th 779, 788 [135 Cal.Rptr.2d 477] ["JNOV procedure, by definition, applies to jury trials"]; *Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp.* (2003) 111 Cal.App.4th 1328, 1337, fn. 6 [4 Cal.Rptr.3d 655] [absent jury verdict, motion for judgment notwithstanding verdict improper].) Accordingly, while we arguably have jurisdiction to consider such an appeal, the only possible outcome would be a summary affirmance of the denial of the motion for judgment notwithstanding the verdict on the ground the motion was not valid.

■ Focusing on Glair's alternative request for a new trial does not assist Glair because an order denying a new trial motion is not separately appealable. (See *Walker v. Los Angeles County Metropolitan Transportation*

*Authority* (2005) 35 Cal.4th 15, 18 [23 Cal.Rptr.3d 490, 104 P.3d 844] (*Walker*) ["order denying a motion for new trial is nonappealable"]; *Rodriquez v. Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907] [appeal from order denying new trial properly dismissed because not appealable order]; *Lippman v. City of Los Angeles* (1991) 234 Cal.App.3d 1630, 1633, fn. 1 [286 Cal.Rptr. 406] (*Lippman*) [same].) Because the underlying judgment is no longer appealable, we cannot construe the notice of appeal as seeking review of both the judgment itself and the denial of the new trial motion, as the Supreme Court did in *Walker, supra,* 35 Cal.4th at pages 19–20.

■ Liberally construing Glair's purported motion for judgment notwithstanding the verdict as a statutory motion to vacate the judgment pursuant to section 663—a construction that notably neither Glair nor the city has requested—also does not aid Glair because, like orders denying motions for a new trial, the denial of a motion to vacate the judgment and enter a different judgment is not separately appealable. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 890 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*).)

In *Clemmer, supra,* 22 Cal.3d 865, the plaintiffs, a widow and minor son of a murder victim, had obtained a jury verdict in their action against an insurer to recover the wrongful death judgment previously entered against the insured perpetrator. The insurer filed several postverdict motions including a motion for judgment notwithstanding the verdict and a motion for new trial and, following entry of judgment, also filed a motion to vacate the judgment pursuant to section 663. The trial court denied the insurer's motion for judgment notwithstanding the verdict; granted the new trial motion in part on a limited issue (whether the death had been caused by a willful act) and denied it in all other respects; and denied the section 663 motion to vacate the judgment and enter a new judgment. The plaintiffs appealed from the order granting a limited new trial, and the insurer appealed from the denial of the motion for judgment notwithstanding the verdict, the denial of the new trial motion and the denial of its section 663 motion to vacate the judgment and enter a different judgment. (*Clemmer,* at pp. 871–873.)

The Supreme Court considered the merits of the insurer's appeal from the motion for judgment notwithstanding the verdict, but dismissed its appeal to the extent it sought review of the trial court's denials of the new trial motion and motion to vacate the judgment, concluding, without elaboration, the latter two orders were not separately appealable. (*Clemmer, supra,* 22 Cal.3d at p. 890 ["the purported appeals from the orders denying the motion to set aside and vacate the judgment and enter a new and different judgment and the [denial of the] motion for a new trial on all issues must also be dismissed, said orders being nonappealable"].) In dismissing the appeal, however, the court did not expressly overrule or even address established precedent

holding a statutory motion to vacate the judgment and to enter a new and different judgment pursuant to section 663 was separately appealable as an order following a judgment. (See, e.g., *Socol v. King* (1949) 34 Cal.2d 292, 296–297 [209 P.2d 577] [statutory motion to vacate judgment pursuant to § 663 is separately appealable as an order following a judgment]; *Hollister Convalescent Hosp., Inc., v. Rico, supra,* 15 Cal.3d at p. 663 [same].)

Some Courts of Appeal have questioned the significance of *Clemmer*'s conclusion concerning the appealability of orders denying a section 663 motion to vacate the judgment. (See, e.g., *Howard v. Lufkin* (1988) 206 Cal.App.3d 297, 302 [253 Cal.Rptr. 422] ["Without discussion of the established rule, and in a statement superfluous to the opinion, the [C]ourt contradicted a long standing judicially created rule of civil procedure. . . ." The " 'summary and conclusory nature of the decision' " on that issue " 'undermines its status as substantial authority' "]; see also *Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 202 [218 Cal.Rptr. 815] [calling the dismissal of the appeal from the order denying the § 663 motion an "incongruous" ruling creating "a perplexing question of stare decisis" and expressly inviting the Supreme Court to clarify its intent].) Finding the analysis in *Howard* to be persuasive, several Courts of Appeal have simply held, without even considering *Clemmer, supra,* 22 Cal.3d 865, orders denying a section 663 motion to vacate are appealable. (See, e.g., *Gallup v. Board of Trustees* (1996) 41 Cal.App.4th 1571, 1573, fn. 1 [49 Cal.Rptr.2d 289]; *Norager v. Nakamura* (1996) 42 Cal.App.4th 1817, 1819, fn. 1 [50 Cal.Rptr.2d 481]; but see, e.g., *Neufeld v. State Bd. of Equalization* (2004) 124 Cal.App.4th 1471, 1476, fn. 4 [22 Cal.Rptr.3d 423] [after *Clemmer* appeal from motion to vacate the judgment and enter different judgment not separately appealable].)

We noted the confusion percolating in the appellate courts concerning the appealability of an order denying a section 663 motion nearly 15 years ago in our opinion in *Lippman, supra,* 234 Cal.App.3d at page 1633, footnote 1 ("Whether an appeal will lie from denial of a motion to vacate under Code of Civil Procedure section 663 is unclear after our Supreme Court's decision in *Clemmer*[,] [*supra,*] 22 Cal.3d 865, 890"), but found it unnecessary to address the question there because the error of law raised in that case could properly be considered in the appeal from the underlying judgment. (*Lippman,* at p. 1633, fn. 1.) Here, however, in order to consider the merits of Glair's appeal, we must first denominate a mislabeled motion for judgment notwithstanding the verdict a section 663 motion to vacate the judgment, a label Glair did not use and does not request, and then conclude that, notwithstanding *Clemmer, supra,* 22 Cal.3d 865, an order denying such a motion is separately appealable.

■ We are compelled to follow *Clemmer, supra,* 22 Cal.3d 865, which, although not expressly, certainly implicitly overruled *Socol v. King, supra,* 34 Cal.2d 292 and *Hollister Convalescent Hosp., Inc. v. Rico, supra,* 15 Cal.3d 660. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456 [20 Cal.Rptr. 321, 369 P.2d 937] [intermediate court bound to follow binding precedent of higher reviewing court and refusal to do so is in excess of intermediate court's jurisdiction]; *People v. Smith* (2003) 110 Cal.App.4th 1072, 1091 fn. 31 [1 Cal.Rptr.3d 901] [same].) Although *Auto Equity* does not mandate adhering to dicta (see, e.g., *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301 [77 Cal.Rptr.2d 296] [intermediate court not bound by dicta of higher court; dicta has "no force as precedent"]; but see *People v. Trice* (1977) 75 Cal.App.3d 984, 986–987 [143 Cal.Rptr. 730] ["Whether the Supreme Court's obvious awareness of the consequences of its statement elevates the dictum to a holding or whether it is a dictum that we must follow, does not make much difference. We follow."]), we are not persuaded the court's express dismissal of the appeal from the section 663 motion to vacate the judgment should be disregarded as mere dictum: The dismissal was an integral part of the disposition in *Clemmer.* (See *Clemmer,* at p. 890; see also *Neufeld v. State Bd. of Equalization, supra,* 124 Cal.App.4th at p. 1476, fn. 4 [following *Clemmer* as binding precedent requiring dismissal of appeal from § 663 motion to vacate judgment].)

■ Although we once again suggest the Supreme Court provide further guidance and eliminate the apparent confusion in the intermediate appellate courts on this issue, our conclusion the denial of a section 663 motion is not separately appealable is reinforced by the language (and the absence of language) in both section 904.1 and rule 8.108. As the court stated in *Walker, supra,* 35 Cal.4th at page 19, with rare exception, " 'no order or judgment in a civil action is appealable unless it is embraced within the list of appealable orders provided by statute.' " Although section 904.1 expressly authorizes an appeal from an order granting a new trial and an order denying a motion for judgment notwithstanding the verdict (§ 904.1, subd. (a)(4)), it makes no similar provision for denial of motions to vacate the judgment and enter a new judgment.[7]

■ The nonappealability of an order denying a motion to vacate the judgment is also strongly suggested by rule 8.108. Although rule 8.108 lists

---

[7] No separate listing for an order *granting* a motion to vacate the judgment and enter a new judgment is necessary because the new judgment itself (like the new judgment entered after the granting of a motion for judgment notwithstanding the verdict) is appealable, together with all antecedent rulings. (§§ 904.1, subd. (a)(1), 906.)

the various posttrial motions that may be filed and indicates their effect on extending the time to appeal from the judgment itself (see rule 8.108(a)–(d)), it expressly contemplates the separate appealability of only one such motion, a motion for judgment notwithstanding the verdict. (See rule 8.108(c)(2) ["time to appeal from an order denying a motion for judgment notwithstanding the verdict is governed by rule 8.104"].) To be sure, nothing in section 904.1 or rule 8.108 expressly prohibits the separate appealability of a section 663 motion to vacate the judgment. Nor is it incongruous to interpret section 904.1 subdivision (b)'s authorization for the appealability of "orders made after a judgment" to include a section 663 motion to vacate the judgment and enter a new or different judgment. (See, e.g., *Socol v. King, supra,* 34 Cal.2d at pp. 296–297.) ▉ Still, the most natural reading of section 904.1 and rule 8.108(b), particularly when considered together with *Clemmer, supra,* 22 Cal.3d 889, leads to the conclusion that, like orders denying a new trial (*Walker, supra,* 35 Cal.4th at p. 19) or denying a motion for reconsideration of an appealable order (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1458 [30 Cal.Rptr.3d 914]; *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242 [87 Cal.Rptr.2d 346]),[8] orders denying a motion to vacate a judgment and enter a new and different judgment are not separately appealable. (Cf. *Reese,* at p. 1242 [§ 904.1 does not authorize appeals from orders denying motion for reconsideration of appealable order; "to hold otherwise would permit, in effect, two appeals for every appealable decision and promote the manipulation of the time allowed for an appeal"].)

In sum, even after affording Glair every liberal construction of the notice of appeal possible, we have no jurisdiction to consider the merits of the appeal.

---

[8] There is some authority that a motion for reconsideration based on new facts or law is appealable because the injection of new facts makes it impossible to review the issue on an appeal from the underlying judgment. (See, e.g., *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 477, fn. 2 [121 Cal.Rptr. 477, 535 P.2d 341]; *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 710–711 [269 Cal.Rptr. 605]; but see *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 769 [57 Cal.Rptr.2d 818] [orders denying motions for reconsideration never appealable even when new facts raised]; *Annette F. v. Sharon S., supra,* 130 Cal.App.4th at pp. 1457–1459 [acknowledging "split of authority" but observing prevailing view among appellate courts is denial of motions for reconsideration never appealable under any circumstances]; see also Advisory Com. com., to rule 8.108, subd. (d) [noting split of authority, stating rule 8.108 "takes no position" on whether order denying motion for reconsideration of appealable order is itself an appealable order and calling the issue a "legislative matter"].) We lend our voice to the those appellate courts encouraging the Legislature to clarify the issue but note it is not pertinent to our analysis here, as it is undisputed Glair's motion did not rely on new facts, and the issue raised therein could have been appealed as part of a timely appeal from the underlying judgment.

## DISPOSITION

The appeal from the order denying the motion for judgment notwithstanding the verdict is dismissed. The City of Los Angeles is to recover its costs on appeal.

Johnson, J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 31, 2007, S156236.