Filed 12/11/23

VERMONT SUPERIOR COURT                    CIVIL DIVISION
Rutland Unit                              Case No. 23-CV-02746
83 Center Street
Rutland VT  05701
802-775-4394
www.vermontjudiciary.org



| | |
|---|---|
| Lynn Lamothe-Farwell,<br>        Plaintiff<br><br>        v.<br><br>Community Health Centers of the Rutland<br>Region, Inc.,<br>        Defendant | DECISION ON MOTIONS |

### RULING ON PLAINTFF'S MOTIONS FOR RECONSIDERATION
### AND INTERLOCUTORY APPEAL

On October 9, 2023, this Court dismissed Count III of Plaintiff Lynn Lamothe-Farwell's Complaint, asserting a claim under the private enforcement provision of the Vermont Consumer Protection Act ("CPA").  Lamothe-Farwell alleges that her former employer, Defendant Community Health Centers of the Rutland Region, Inc., unfairly and deceptively induced her into accepting employment, and that she was injured as a result.  The Court concluded that Lamothe-Farwell failed to state a claim because the CPA's private enforcement provision does not apply to an employee's claim against her employer for making false representations in the hiring process.  Among other things, the Court found that employees like Lamothe-Farwell are not "consumers" who purchase goods or services from their employers.  Lamothe-Farwell seeks reconsideration of that decision, and alternatively, seeks leave to file an interlocutory appeal of the decision.  Plaintiff is represented by Kaveh S. Shahi, Esq., and Defendant is represented by Andrew H. Maass, Esq.  For reasons that follow, both motions are DENIED.

I.      Motion For Reconsideration.

Pursuant to Rule 54(b) of the Vermont Rules of Civil Procedure, the Court has discretion to revise its decisions on a claim before the entry of final judgment.  In pertinent part, that Rule provides that

> any order or other form of decision, however designated, which adjudicates fewer
> than all the claim or the rights and liabilities of all the parties shall not terminate
> the action as to any of the clams or parties, and the order or other form of decision
> is subject to revision at any time before entry of judgment adjudicating all the
> claims and the rights and liabilities of all the parties.

Vt. R. Civ. P. 54(b).  The discretion afforded by this Rule may be exercised "as justice requires, that is, in accordance with the principles of equity and fair play." *Putney Sch., Inc. v. Schaaf*, 157 Vt. 396, 407, 599 A.2d 322, 328 (1991).  That standard is not a particularly liberal one, however.  *See* 18B Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 4478.1 (3d ed., April 2023 update) ("Reconsideration . . . is not provided indiscriminately whenever some party might wish it.").  As the Second Circuit has observed when construing the analogous federal standard, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quotation omitted).  Thus, an interlocutory adjudication of a claim "may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id*. (quotation omitted).  Here, Lamothe-Farwell does not point to any change in controlling law or to new evidence, and the Court concludes that she has failed to identify any manifest or egregious errors of law warranting revision of the dismissal decision.

First, Lamothe-Farwell argues that the Court erred by construing the CPA narrowly, in violation of the principle that remedial statutes like the CPA must be construed broadly to achieve their remedial purposes.  *See* Pl.'s Mot. for Reconsideration of Dismissal of Count III (filed Oct. 19, 2023), at 2-3.  However, this argument merely expresses dissatisfaction with the Court's construction of key statutory terms, including, for example, "consumer," "goods or services," and "seller"; it presents no egregious or obvious error that would warrant reconsideration.  *See, e.g.*, *Chet's Shoes, Inc. v. Kastner*, 710 F. Supp. 2d 436, 454 (D. Vt. 2010) ("When a party merely disagrees with the previous court decision, such disagreement should be resolved in the normal appellate process, not in a motion for reconsideration." (quotation omitted)), *aff'd*, 449 F. App'x 37 (Fed. Cir. 2011).

Further, "while the [CPA] must be construed liberally in order to serve its remedial purpose, [the Court] cannot so freely stretch its meaning as to evade the Legislature's intent." *Maurice v. Fed. Ins. Co.*, No. 2:08-cv-13, 2009 WL 10679101, at *3 (D. Vt. Jan. 13, 2009) (quoting *Wilder v. Aetna Life & Casualty Ins. Co.*, 140 Vt. 16, 19, 433 A.2d 309, 310 (1981)).  Indeed, a "remedial statute is one designed to cure a mischief or remedy a defect in existing laws." *Carter v. Fred's Plumbing & Heating Inc.*, 174 Vt. 572, 574, 816 A.2d 490, 493 (2002) (mem.) (quotation omitted).  This means that the liberal construction afforded a remedial statute such as the CPA is properly limited by the nature of the issue or concern that prompted the statute's enactment.  *See* 3 Shambie Singer, *Sutherland Statutory Construction* § 60:1 (8th ed., Nov. 2023 update) ("Courts liberally, or broadly, construe remedial statutes in order to help remedy the defects in the law that prompted their enactment."); *see also id*. (noting "it is the business of . . . judges . . . to construe the act, as to suppress the mischief and advance the remedy" (quoting 1 Blackstone, *Commentaries* 8 (1765-69)).  Here, there is no serious suggestion that § 2461(b) was enacted because employees in our state lacked sufficient legal remedies against their employers for deceptive or unfair hiring practices.  Rather, it is well settled that the CPA "was created to protect citizens from unfair and deceptive acts in *consumer transactions.*" *Wilder*, 140 Vt. at 18 (emphasis added) (citing *Christie v. Dalmig, Inc.*, 136 Vt. 597, 600-01, 396 A.2d 1385, 1387-88 (1979) ("The purpose of the Consumer Fraud Act is to protect citizens from unfair or deceptive acts of merchants.")); *see also Sawyer v. Robson*, 2006

VT 136, ¶ 11 n.7, 181 Vt. 216 (observing that the private enforcement remedy was added in 1969 to allow "individual *consumers* to sue when they are damaged by deceptive practices," and that "the range of possible defendants" was broadened by a 1973 amendment allowing "*consumers* to sue 'other violators'" (emphasis added)).  Thus, the Court did not overlook any clear remedial purpose of the CPA.[1]

Second, Lamothe-Farwell contends that the Court committed obvious error by "limit[ing] the statutory definition of 'consumer' to someone who agrees to pay consideration for goods or services."  Mot for Recon. at 3.  However, Lamothe-Farwell's argument ignores the fact that the CPA specifically defines a "Consumer" as "any person who purchases, leases, contracts for, *or otherwise agrees to pay consideration for* goods or services not for resale in the ordinary course of the person's trade or business but for the person's use or benefit."  9 V.S.A. § 2451a(1) (emphasis added).  Indeed, nowhere in her briefing does Lamothe-Farwell rely on or even mention § 2451a, the CPA's definition section.  Instead, citing the penalty provision in § 2461(b), she repeatedly asserts that the definition of consumer is satisfied by "'[a]ny person who . . . contracts for . . . services . . . .'"  Mot. for Recon. at 4.  Leaving aside that the word "person" does not appear in § 2461(b), Lamothe-Farwell cannot change the Legislature's definition of "consumer" through the liberal use of ellipses.  To be sure, the Act's requirement of an agreement to provide consideration can be achieved through a contract.  But as Lamothe-Farwell acknowledges, her "employment relationship with [Community Health] was like any other employment consisting of services rendered by an employee for pay by the employer."  Mot. for Recon. at 4.  Simply put, under the CPA, a consumer does not provide services and get paid for them; a consumer pays money or gives other consideration to someone in exchange for goods or services.  Moreover, employment does not properly fall within the category of "goods or services" under the CPA.  Thus, even accepting the contention that her work or services performed for Community Health constitutes "consideration," Lamothe-Farwell was not a "consumer" of any goods or services furnished (or promised) by Community Health, as required under § 2451a(1).  As the Supreme Court emphasized in *Wilder*, the CPA, "and more specifically the 'unfair or deceptive acts or practices' portion of the act deal solely with consumer transactions in which there is an actual sale of goods or services involving a buyer, a seller, and the goods or services."  *Wilder*, 140 Vt. at 18-19 (quotation omitted) (affirming dismissal of plaintiff's CPA claim, noting that he failed to describe "a contractual situation between buyer

---

[1] The purpose of the CPA as a whole "is to complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition."  9 V.S.A. § 2451.  In particular, the Legislature identified the Federal Trade Commission Act as an analogous statute addressing similar issues.  9 V.S.A. § 2453(b); *see Elkins v. Microsoft Corp.*, 174 Vt. 328, 335-68, 17 A.2d 9, 16 (2002) (Vermont courts should interpret the CPA's terms by looking to federal court decisions construing similar terms in the FTC Act).  This Court has found no federal decision, not does Lamothe-Farwell point to any, suggesting that the FTC Act was intended to address conduct occurring within hiring or the employee-employer relationship.

and seller"). Accordingly, the Court did not commit manifest error in determining that Lamothe-Farwell is not a consumer under the CPA.[2]

Third, the Court did not commit obvious error by failing to address *Herr v. Nestle U.S.A., Inc.*, 135 Cal. Rptr. 2d 477 (Cal. Ct. App. 2003). In *Herr*, the court held that California's Unfair Competition Law ("UCL") authorized a former employee's suit to enjoin his past employer from practices of age discrimination that violated California's Fair Employment and Housing Act. Unlike 9 V.S.A. § 2461(b), however, which grants only "consumers" the right to sue when they have sustained injuries or damages caused by deceptive or unfair commercial acts or practices, the UCL permitted suits "by *any person* acting for the interests of itself, its members or the general public" for "any unlawful . . . business act or practice" that "implicate[s] unfair competition." *Herr*, 135 Cal. Rptr. 2d at 485, 479 (emphasis added). Accordingly, *Herr* is not on point, and therefore the Court did not overlook it in reaching its decision.

In short, the Court finds no basis to revise its dismissal of Lamothe-Farwell's CPA claim, and therefore, Lamothe-Farwell's motion for reconsideration is denied.

## II.     Motion for Interlocutory Appeal.

In the alternative, Lamothe-Farwell seeks leave to appeal the Court's interlocutory dismissal decision to the Vermont Supreme Court, pursuant to Rule 5(b)(1) of the Vermont Rules of Appellate Procedure. That Rule specifies three criteria that must be satisfied before permission for interlocutory appeal may be granted: "First, the appeal order must involve a 'controlling question of law.' Second, there must be 'substantial ground for difference of opinion' as to the correctness of that order. Third, an interlocutory appeal should 'materially advance the termination of the litigation.'" *In re Pyramid Co. of Burlington*, 141 Vt. 294, 301, 449 A.2d 915, 918 (1982) (quoting Vt. R. App. P. 5(b)(1)). As the Supreme Court has

---

[2] Relying on *Sawyer v. Robson*, Lamothe-Farwell also argues that the Court erred by failing to address her theory that Community Health is subject to suit as an "other violator." *See* 9 V.S.A. § 2461(b). Given the Court's conclusion above that Lamothe-Farwell does not fall within the definition of a consumer, the Court need not reach this argument. However, the Court notes that Lamothe-Farwell again fails to identify any manifest error. In *Sawyer*, the Supreme Court held that, because "other violator" lacks a statutory definition, it should be plainly construed to mean "anyone engaged in an unfair or deceptive commercial practice in violation of the [CPA's] prohibition on such activity." *Sawyer*, 2006 VT 136, ¶ 12. However, as the CPA makes clear, the alleged unfair or deceptive acts must occur "in commerce." 9 V.S.A. § 2453(a). While the term "commerce" is not defined in the Act, the Supreme Court has adopted "its ordinary meaning as an 'interchange of goods and commodities, [especially] on a large scale.'" *Carter v. Gugliuzzi*, 168 Vt. 48, 54, 716 A.2d 17, 22 (1998) (quoting *Random House Unabridged Dictionary* 1739 (2d ed. 1987)); *see also Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21, 195 Vt. 524 (holding that "the 'in commerce' requirement narrows the CFA's application to prohibit only unfair or deceptive acts or practices that occur in the consumer marketplace"). Here, Community Health is not engaged in the sale of any goods, commodities, or services when it seeks to hire new employees; rather, as Lamothe-Farwell alleges, its business is offering and selling healthcare services to the local community. *See* Compl. ¶ 2.

explained, interlocutory appeals "are an exception to the normal restriction of appellate jurisdiction to the review of final judgments." *Id*. at 300. In general, "[p]iecemeal appellate review causes unnecessary delay and expense, and wastes scarce judicial resources." *Id*. Thus, there is only "a narrow class of cases in which interlocutory review is nonetheless advisable." *Id*. at 301. All three criteria must be met in order to grant interlocutory appeal. *See id*. at 302. The Court concludes that Lamothe-Farwell has not demonstrated that this is such an exceptional case, nor made the necessary showing to satisfy any of the above requirements.

First, dismissal of Lamothe-Farwell's CPA claim does not involve a controlling question of law. To meet this standard, reversal of an interlocutory order must at least "result in an immediate effect on the course of litigation and in some savings of resources either to the court system or to the litigants," such as "by saving substantial litigation time, or by significantly narrowing the range of issues, claims, or defenses at trial." *Id*. at 303 (quotation omitted). Thus, where a case "involves numerous issues that are not a part of [the proposed] appeal," such that even in the event of a successful appeal "a complex trial involving numerous issues would still be necessary to resolve th[e] case," then the interlocutory decision is of "diminished" impact or effect and not "controlling." *Id*.; *see also State v. Univ. of Vt.*, 149 Vt. 663, 664, 547 A.2d 1348, 1349 (1988) (mem.) (trial court order did not involve "controlling question of law" since reversal on interlocutory appeal would only bar litigation of tort claims and "would not resolve the underlying allegation of sexual discrimination and retaliation" asserted under FEPA).

Here, a successful interlocutory appeal will not immediately affect the course of litigation in a way likely to save judicial or litigants' resources. Lamothe-Farwell's Complaint asserts numerous claims in addition to her CPA claim, including for breach of implied contract, violation of the implied covenant of good faith and fair dealing, intentional or negligent misrepresentation, and retaliation and disability discrimination under the Vermont Fair Employment Practices Act. As she acknowledges, these additional claims raise issues of liability and damages that are distinct from those raised by her CPA claim. *See* Pl.'s Reply (filed Nov. 14, 2023) at 3. Therefore, reinstating the CPA claim will do nothing to avoid the time and work related to discovery, potential dispositive motions, or trial of even the CPA claim itself, much less avoid the burdens of litigating the many other distinct claims and issues in this case. In short, the course of litigation will proceed in a substantially similar fashion, "with or without" the CPA claim. *See Univ. of Vt.*, 149 Vt. at 664.

Lamothe-Farwell states that she plans to appeal the Court's ruling on her CPA claim, regardless of the outcome of the trial involving her other claims. *See* Pl.'s Reply at 3. Of course, that remains to be seen, particularly given all of the possible twists, turns, decisions, and ultimate resolutions that could occur over the lifetime of this case. Nevertheless, the Court does not find this type of declaration by a party particularly material to its inquiry. The question is not whether reversal of the interlocutory decision will avoid the *risk* that the parties will need to engage in a second round of litigation involving a claim that might be restored and remanded on appeal after entry of final judgment. Otherwise, this criterion would be satisfied in just about every case involving dismissal of a claim. Here, there is no indication that interlocutory reversal will "result in an *immediate* effect on the course of litigation" or realize some clear and substantial savings for either litigants or the court system. *Pyramid*, 141 Vt. at 303 (emphasis added) (noting that "the core purpose of interlocutory appeal is to avoid unnecessary proceedings

5

in the trial courts." (quotation omitted)).  Accordingly, the Court concludes the proposed appeal does not involve a controlling question of law.

Similarly, Lamothe-Farwell has not shown that an interlocutory appeal has even "the potential to materially advance the termination of the litigation." *Pyramid*, 141 Vt. at 305 (quoting *Castle v. Sherburne Corp.*, 141 Vt. 157, 162, 446 A.2d 350, 352 (1982)).  As the Supreme Court has emphasized, an "interlocutory appeal is proper only if it may advance the *ultimate* termination of a case.  A trial court must consider not only the time saved at trial, but also the time expended on appeal." *Id*.  Regardless of the outcome, the interlocutory appeal itself will take substantial time, perhaps up to a year.  While this would cause considerable delay in the case being ready for trial, it is not likely to result in any significant savings of overall litigation time. *See Lamb v. Bloom*, 159 Vt. 633, 634, 622 A.2d 505, 507 (1993) (mem.) (noting that the Court accepts "far fewer interlocutory appeals than it did in the past," having "learned that interlocutory review holds out the promise of reaching the proper result more expeditiously but more often creates injustice through extensive delay" and that hearing the case on interlocutory appeal "will interrupt trial court processing for one to two years").  If the Court's decision on the CPA claim is reversed, that will not make the litigation of the retaliation, discrimination, or breach of contract claims any less time consuming.  Nor will an interlocutory appeal of the CPA claim reduce the chances of the parties raising appealable issues related to other claims in this case after entry of final judgment.  Thus, an interlocutory appeal will not likely further the "policy of avoiding piecemeal appeals." *Castle*, 141Vt. at 162.  This Rule 5(b)(1) factor also has not been demonstrated. *See Pyramid*, 141 Vt. at 306 (interlocutory appeal improper where "the trial court could not have doubted that the final verdict . . . would be appealed, regardless of [the] resolution of the interlocutory appeal" and "neither affirmance nor reversal offered much prospect of advancing the ultimate termination of th[e] litigation").

Finally, the Court does not agree with Lamothe-Farrell that there is a "substantial ground for difference of opinion" as to its decision on the CPA claim.  That standard is met if there is a sufficient "degree of doubt in the mind of a trial judge" such that she believes "a reasonable appellate judge could vote for reversal of the challenged order." *Id*. at 307.  Notably, Rule 5(b) "does not supersede the trial court's authority and responsibility to decide difficult legal issues." *Id*. at 306.  Trial courts "should not be 'bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression." *Id*. (quoting 16 Charles A. Wright, et al., *Fed. Prac. & Proc.* § 3930, at 157 (1977)).  Thus, courts should "place little stock in the vehemence of disagreeing counsel." *Id*. (citing *Fed. Prac. & Proc.* § 3930, at 157 n.6).  As the *Pyramid* Court further explained, "[n]or should the trial courts be swayed by the unique character of a particular issue.  Interlocutory appeal was not intended merely to provide review of difficult rulings in hard cases," or "to substitute wholesale appellate certainty for trial court uncertainty." *Pyramid*, 141 Vt. at 306-07 (quotations omitted).

In light of this guidance, the Court is not persuaded by Lamothe-Farrell's argument that the novelty of her CPA claim increases the likelihood that a reasonable appellate judge would reverse the dismissal decision. *See* Pl.'s Reply at 3.  While the issue addressed by the Court is certainly a matter of first impression in Vermont, it is telling that Lamothe-Farwell is unable to cite a single state or federal decision supporting her theory that employers may be sued under the FTC Act or any state analogs for deceptive or misleading practices in hiring.  Further, the federal

6

court's analysis in *Nashef v. AADCO Medical, Inc.*, 947 F. Supp. 2d 413 (D. Vt. 2013), a case involving the CPA, supports this Court's decision. Indeed, *Nashef* also cited several state and federal decisions holding that analogous state consumer protection statutes "do not afford a private remedy for an employer or employee for issues arising out of the employment relationship." *Nashef*, 947 F. Supp. 2d at 425. As federal courts have recognized, the "substantial ground for difference of opinion" criterion often refers to inconsistent decisions within the circuit or among circuits as to a particular legal issue. *See, e.g.*, *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994) (noting that "identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement" (quotation omitted)); *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (a substantial ground for difference of opinion exists "when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit" (quotation omitted)). On the other hand, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). Lamothe-Farrell has presented no basis to find that there is a substantial ground for difference of opinion regarding her CPA claim.[3]

Accordingly, because the Court cannot find that all, or indeed any, of the Rule 5(b)(1) factors have been met, Lamothe-Farwell's motion for interlocutory appeal must be denied.

Order

For the foregoing reasons, Plaintiff's Motion for Reconsideration and for Interlocutory Appeal (Motions 2, 3) are DENIED.

Electronically signed on December 8, 2023 at 5:45 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

---

[3] It bears noting that while Lamothe-Farwell's legal theory is novel, her allegations against her employer are not all that uncommon. That is, employees often file lawsuits when their employers engage in conduct that adversely affects them or that does not comport with the employers' stated policies, promises, handbooks, statements of values, etc. The fact that claims like Lamothe-Farwell's are not generally asserted under consumer protection acts suggests that these statutes do not afford a remedy for disputes arising from an employment relationship. The novelty of her claim, therefore, is a factor that does not recommend it. Indeed, the reality that other statutes and legal theories readily apply to her allegations supports the conclusion that they are not covered by the CPA.