### In re Pyramid Company of Burlington

[449 A.2d 915]

No. 125-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed June 8, 1982

*Fred I. Parker* and *Susan F. Eaton* of *Langrock Sperry Parker and Stahl*, Middlebury, and *Carl K. Zucker*, Philadelphia, Pennsylvania, for Plaintiff.

*Richard A. Spokes* and *Steven F. Stitzel* of *Spokes, Foley and Obuchowski*, Burlington, for Chittenden County Regional Planning Commission.

*Frederic W. Allen* and *Robert R. McKearin* of *Dinse, Allen & Erdmann*, Burlington, and *John J. Easton, Jr.*, Attorney General, and *J. Wallace Malley*, Assistant Attorney General, Montpelier, for Vermont State Agencies.

*McNeil, Murray & Sorrell, Inc.*, Burlington, for City of Burlington.

**Hill, J.** This case concerns an application for a land development permit under Act 250, 10 V.S.A., ch. 151. The Pyramid Company (Pyramid) appealed from a decision of the district environmental commission denying its permit application for a shopping mall in the Town of Williston. Pyramid then appealed to the Chittenden Superior Court under 10 V.S.A.

§ 6089(a). The matter is now before this Court pursuant to the superior court's order certifying an interlocutory appeal under V.R.A.P. 5(b). We hold that the trial court incorrectly granted permission for an interlocutory appeal, and therefore dismiss the appeal.

## I.

In October of 1978, Pyramid obtained a building permit for the construction of a large shopping mall in the Town of Williston. Before commencing construction, however, it was necessary for Pyramid to obtain a permit under the provisions of Act 250. It is the struggle over that permit which is the basis of this case.

Intense opposition confronted the application. Four of the objections to this development form the basis of this appeal. First, the opponents argue that the permit should be denied because the mall would harm the economy of the City of Burlington.[1] Second, the mall would allegedly cause transportation problems extending beyond the Town of Williston. Third, the mall purportedly does not comply with the plan of the Town of Williston. Fourth, the proposed mall would violate 10 V.S.A. § 6086(a)(9)(H) because it is an excessively costly "scattered development."

In an attempt to disarm each of these objections, Pyramid filed a motion for partial summary judgment in the Chittenden Superior Court. In pertinent part, Pyramid contended: (1) economic impact to the City of Burlington is not cognizable under Act 250; (2) transportation congestion outside of the Town of Williston is beyond the scope of Act 250; (3) the Act 250 permit process does not permit further review of the proposed mall's conformity with the plan of the Town of Williston; and (4) the proposal withstands scrutiny under the "scattered development" provision of Act 250 as a matter of law.

The trial court denied Pyramid's motion for summary judgment. The court held that the economic impact of the mall on Burlington was cognizable under Act 250. The mall's impact on transportation beyond the Town of Williston was

---

[1] The City of Burlington does not share a common boundary with the Town of Williston.

also held relevant to the permit process. The court concluded that Act 250 required a de novo determination on whether Pyramid's application conformed with the Town of Williston's plan. Finally, the court held that more evidence would be required on whether the proposal violated the "scattered development" prohibition in Act 250.

Pyramid then moved for permission to take an interlocutory appeal to challenge the denial of summary judgment. Pyramid claimed that regardless of the existence of any material issues of fact, Pyramid was entitled to partial summary judgment as a matter of law on the questions proposed for certification. See V.R.C.P. 56, Reporter's Notes (1971) (discussing the relationship of V.R.C.P. 56 to V.R.C.P. 12(b)(6)). The trial court certified five questions for review under V.R.A.P. 5(b):

(1) Does 10 V.S.A. § 6086(a)(7) authorize consideration of whether projected decline in shoppers goods sales and resultant lowering of property values and reductions in tax revenues and municipal services may constitute an unreasonable burden placed on the ability to provide municipal or governmental services of a municipality which is not contiguous to the municipality in which the proposed development is to be located?

(2) Does 10 V.S.A. § 6086(a)(5) authorize consideration of whether a proposed development will cause future unreasonable congestion or unsafe conditions with respect to the use of highways, waterways, railways, airports and airways, and other means of transportation existing or proposed which are physically located outside the municipality in which the proposed development is to be located?

(3) Does 10 V.S.A. § 6086(a)(10) require the Court to make a de novo review of the conformity of a proposed development with a duly adopted local plan under Chapter 117 of Title 24 when the local planning commission has already found conformity and granted final subdivision approval?

(4) Is a proposed development (consisting of a mall building with two department stores, eighty satellite stores, twenty food service facilities and parking for

twenty-three hundred vehicles) exempt from the 10 V.S.A. § 6086(a)(9)(H) costs of scattered development criterion as a matter of law when the following structures and uses are located within one mile by road from the development site: three gas stations, a well drilling business and two vehicle sales and service businesses, the Green Mountain Power Service Center, a slaughterhouse, riding stable, roller skating rink, two multi-office buildings and four individual offices, a small multi-store building and four individual stores and seven houses and/or farms?

(5) Does 10 V.S.A. § 6086(a)(9)(H) authorize consideration of whether projected decline in shoppers goods sales and resultant lowering of property values and reductions in tax revenues and municipal services may directly or indirectly cause additional costs of public services and facilities in a municipality which is not contiguous to the municipality in which the proposed development is to be located?

The court issued an opinion in support of its order granting permission to appeal. The court reasoned that answers to each of the certified questions could narrow the scope of the issues at trial, thereby shortening the length of the trial. Without elaboration, the court concluded that there were substantial grounds for disagreement on the court's resolution of these issues.

## II.

Interlocutory appeals are an exception to the normal restriction of appellate jurisdiction to the review of final judgments. There are weighty considerations that support the finality requirement. Piecemeal appellate review causes unnecessary delay and expense, and wastes scarce judicial resources. See Redish, *The Pragmatic Approach to Appealability in the Federal Courts,* 75 Colum. L. Rev. 89, 89 (1975). Furthermore, an appellate court labors under great disadvantages in disposing of interlocutory appeals. The litigants may not yet have narrowed the case's issues sufficiently for appellate review. We are deprived of the benefits of a final trial court opinion. Interlocutory review requires us to de-

cide legal questions in a vacuum, without benefit of factual findings. Appellate decisionmaking suffers from such abstractness. By its very nature then, interlocutory appeals impair this Court's basic functions of correctly interpreting the law and providing justice for all litigants.

Despite those hazards, there is a narrow class of cases in which interlocutory review is nonetheless advisable. An appeal will lie in circumstances that assure the ripeness of issues for appellate review, and safeguard against improvident appellate decisionmaking. Three criteria must be satisfied. First, the appeal order must involve a "controlling question of law."[2] V.R.A.P. 5(b). Second, there must be "substantial ground for difference of opinion" as to the correctness of that order. *Id.* Third, an interlocutory appeal should "materially advance the termination of the litigation." *Id.* We conclude that the instant appeal satisfies none of these criteria.

V.R.A.P. 5(b) is based upon 28 U.S.C. § 1292(b) (1976) and F.R.A.P. 5. See *Castle* v. *Sherburne Corp.*, 141 Vt. 157, 163 n.1, 446 A.2d 350, 353 n.1 (1982); V.R.A.P. 5, Reporter's Notes (1971). Consequently, the policies and rationales underlying the federal statute provide guidance for our construction of V.R.A.P. 5(b). This Court has also had ample opportunity to deal with the scope of interlocutory appeals under 12 V.S.A. § 2386. See *Powers* v. *State Highway Board*, 123 Vt. 1, 5, 178 A.2d 390, 393 (1962). Both the federal and Vermont precedents are important for this decision.

While disagreeing over some details, the federal courts have limited interlocutory appeals to "exceptional" cases. See, e.g., *Paschall* v. *Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979); *Kraus* v. *Board of County Road Commissioners*, 364 F.2d 919, 922 (6th Cir. 1966). The propriety of an interlocutory appeal, however, cannot be gauged by an instinctive evaluation of a case's "exceptional" nature. A more probing analysis is required. The starting point for such an analysis must be the criteria enumerated in V.R.A.P. 5(b).

The rule's criteria do not draw bright lines: the definitions of "controlling questions of law," "substantial grounds for

---

[2] In addition, only an "order" or "ruling" can be subject to interlocutory appeal by the terms of V.R.A.P. 5(b).

difference of opinion," and "material advancement of litigation's termination" are not self-evident. This vagueness is deliberate as it furthers the goals of the interlocutory appeal mechanism:

> The statutory purpose to inject an element of flexibility into the technical rules of appellate jurisdiction established for final judgment appeals . . . and for [other] interlocutory appeals . . . , counsels that so long as the [trial] court has made an order, the remaining elements be treated as guiding criteria rather than jurisdictional requisites. The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal.

16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3930, at 156 (1977) (hereinafter cited as 16 Federal Practice and Procedure).

 The flexibility of V.R.A.P. 5(b) does not, however, give us or the trial courts license to abuse the interlocutory appeal mechanism. The "guiding criteria" of V.R.A.P. 5(b) restrict the trial court's power to certify, and our authority to decide, interlocutory appeals to cases which are ripe for review. Jurisdiction vests in this Court upon certification, regardless of compliance with the rule's criteria. See *State* v. *Mahoney*, 126 Vt. 258, 259, 227 A.2d 401, 402 (1967). A failure to satisfy any one of the V.R.A.P. 5(b) criteria nonetheless precludes certification and appellate decision; appeal in such a case would contradict the purpose of V.R.A.P. 5. This Court will dismiss interlocutory appeals if they were improvidently certified contrary to the criteria of V.R.A.P. 5(b). See *Castle* v. *Sherburne Corp.*, *supra*, 141 Vt. at 165, 446 A.2d at 354; V.R.A.P. 5(b), Reporter's Notes (Cum. Supp. 1981). Thus we must evaluate the propriety of this appeal under the V.R.A.P. 5(b) criteria.

### A.

██ Whether a question of law is "controlling" is not defined by whether the question governs the outcome of the litigation. See *Katz* v. *Carte Blanche Corp.*, 496 F.2d 747,

755 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885 (1974). This factor requires a practical application that focuses upon the potential consequences of the order at issue. "Since the core purpose of [interlocutory appeal] is to avoid unnecessary proceedings in the [trial] courts, the criterion that an order raise a 'controlling question of law' would seem, at a minimum, to require that reversal result in an immediate effect on the course of litigation and in some savings of resources either to the court system or to the litigants." Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),* 88 Harv. L. Rev. 607, 618 (1975). At one extreme, an order that preordains the outcome of litigation is certainly controlling. Further down the continuum, an order may be "controlling" if reversal would have a substantial impact on the litigation, either by saving substantial litigation time, or by significantly narrowing the range of issues, claims, or defenses at trial. See 16 Federal Practice and Procedure, *supra,* § 3930, at 159–60. See also *Avery* v. *Bender,* 126 Vt. 342, 347, 230 A.2d 786, 790 (1967). The appellant vigorously contends that this appeal falls into the latter category of "controlling questions of law."

We reject this contention for several reasons. First, the controlling character of a question can only be evaluated in the context of the underlying action. This suit involves numerous issues that are not a part of this appeal. All of the criteria under Act 250 must be satisfied before the appellant would be entitled to a permit. See 10 V.S.A. § 6086. Even if this Court answered each of the certified questions in the appellant's favor, a complex trial involving numerous issues would still be necessary to resolve this case. The impact of an interlocutory decision relative to the size of this case is therefore diminished. See *Wood* v. *Wood,* 135 Vt. 119, 121, 370 A.2d 191, 192 (1977).

Even if we were to focus upon the certified questions in isolation, their controlling nature would still be doubtful. The range of the potential answers to each of the certified questions is not limited to a "yes" or "no" response. The severity of a development's impact on transportation, or the degree of harm to another municipality's economy, or the extent of deviation from a local plan may prove decisive to the relevance of these factors to an Act 250 decision. Given the range

of the potential answers to these questions, their controlling nature is completely dependent upon the factual record developed at trial. See *Powers* v. *State Highway Board, supra,* 123 Vt. at 5–6, 178 A.2d at 393.

Hidden in the range of potential "legal" answers is an even more significant obstacle to treating these questions as "controlling questions of law." Precisely because the certified questions could yield a range of answers, their status as purely legal questions is subject to doubt. Interlocutory appeal is proper for questions of law, not fact. V.R.A.P. 5(b); 16 Federal Practice and Procedure § 3930, at 160. See *Wilbur* v. *University of Vermont,* 127 Vt. 283, 285–86, 247 A.2d 897, 899 (1968). The certified questions in this case are not questions of "law," as the resolution of each of them may be dictated by the facts that are developed at trial. Simply phrasing a question as turning on a matter of law does not create a question of law for purposes of V.R.A.P. 5(b). A question of law is one capable of accurate resolution by an appellate court without the benefit of a factual record. If factual distinctions could control the legal result, the issue is not an appropriate subject for interlocutory appeal. See *Johnson* v. *Alldredge,* 488 F.2d 820, 822 (3d Cir. 1973), *cert. denied,* 419 U.S. 882 (1974); *State* v. *Elwell,* 131 Vt. 245, 248, 303 A.2d 134, 136 (1973).

This case is certainly ill-suited for appellate decision without a factual record. See *Shatkin* v. *University of Vermont,* 133 Vt. 401, 406, 346 A.2d 525, 528 (1975). The certified questions present issues of great importance which will have a major impact on the reach of Act 250. We may be able to answer these questions more wisely on the basis of distinctions drawn from the factual record. A narrow ruling, tailored to the record in this case, may ultimately emerge. At a minimum, this Court will be better able to decide these issues in the context of a concrete factual record.

The need for a factual record is heightened by the procedural status of this case. Act 250 authorizes a de novo proceeding in an appeal to the superior court. 10 V.S.A. § 6089(a); see *In re Preseault,* 130 Vt. 343, 348, 292 A.2d 832, 835 (1972). The factual record in this case consists of the proceedings and decision of the district environmental

commission in 1978. Additional facts may well be presented in a de novo trial. Indeed, it is likely that numerous changes have occurred since the commission's initial decision. Such changes in the factual record may have a substantial impact on the questions raised in this appeal.

■ We therefore conclude that the certified questions are not "controlling questions of law" within the meaning of V.R.A.P. 5(b).

B.

The second criterion in V.R.A.P. 5(b) is that an interlocutory appeal "must have at least the potential to materially advance the termination of the litigation." *Castle* v. *Sherburne Corp.*, *supra*, 141 Vt. at 162, 446 A.2d at 352. We believe that the trial court incorrectly interpreted this criterion; inherent in this appeal was the prospect of even greater delay.

■ The lower court's order contended that appeal was proper because a ruling by this Court could shorten the time needed for trial. We disagree. Trial time alone is an incorrect metric. An interlocutory appeal is proper only if it may advance the *ultimate* termination of a case. See 16 Federal Practice and Procedure, *supra*, § 3930, at 163. See also *Avery* v. *Bender, supra,* 126 Vt. at 347, 230 A.2d at 790. A trial court must consider not only the time saved at trial, but also the time expended on appeal. See Note, *supra,* 88 Harv. L. Rev. at 626–27.

■ "[T]he lower courts must be mindful of this Court's well-established policy of avoiding piecemeal appeals." *Castle* v. *Sherburne Corp.,* *supra,* 141 Vt. at 162, 446 A.2d at 352 (citing *Gay Brothers Fuel Service* v. *Travelers Indemnity Co.,* 133 Vt. 211, 212–13, 332 A.2d 806, 807–08 (1975); *Isabelle* v. *Proctor Hospital,* 129 Vt. 500, 501, 282 A.2d 837, 838 (1971)). The trial court should have foreseen that certification of this appeal guaranteed piecemeal appeals and the attendant delay of this litigation. More than one year has passed since the trial court certified this appeal. Yet, even if this Court had addressed the merits of this case, we doubt that the ultimate termination of this litigation would have

been advanced. The extra days required to try the issues in this case pale in comparison to the months, stretching into years, required for this appeal. See *In re Paris Air Crash of March 3, 1974*, 399 F. Supp. 732, 739 (C.D. Cal. 1975). Furthermore, the trial court could not have doubted that the final verdict in this matter would be appealed, regardless of this Court's resolution of the interlocutory appeal. In sum, neither affirmance nor reversal offered much prospect of advancing the ultimate termination of this litigation. To the contrary, certification has probably assured an even greater delay. See *Oneida Indian Nation* v. *County of Oneida*, 622 F.2d 624, 628–29 (2d Cir. 1980); *Gay Brothers Fuel Service* v. *Travelers Indemnity Co., supra,* 133 Vt. at 212–13, 332 A.2d at 807–08. The full impact of certification on the termination of this case requires us to conclude that certification was improper.

## C.

The final criterion under V.R.A.P. 5(b) is that the appealed order involve a question on which there is "substantial ground for a difference of opinion." Given our disposition of this appeal, we do not reach the correctness of the rulings involved in the certified questions. Nevertheless, the trial court's conclusory treatment of this factor indicates that confusion over this criterion may also have influenced certification. Consequently, we also address this issue.

 V.R.A.P. 5(b) does not supersede the trial court's authority and responsibility to decide difficult legal issues. Trial courts should not be "bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression." 16 Federal Practice and Procedure, *supra,* § 3930, at 157. (Footnote omitted.) Thus, in interpreting this criterion, the courts should place little stock in the vehemence of disagreeing counsel. See *id.* § 3930, at 157 n.6 (criticizing *Brunswick Corp.* v. *Chrysler Corp.,* 291 F. Supp. 117, 118 (D. Wis. 1968)).

Nor should the trial courts be swayed by the unique character of a particular issue. "[Interlocutory appeal] was not intended merely to provide review of difficult rulings in hard cases." *United States Rubber Co.* v. *Wright,* 359 F.2d 784, 785 (9th Cir. 1966). "[It] was not designed to substitute

wholesale appellate certainty for trial court uncertainty . . . ." *Link* v. *Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 863 (3d Cir.) (en banc), *cert. denied*, 431 U.S. 933 (1977). Rather, there is a limited construction to the "substantial ground for disagreement" criterion.

"[A] standard consistent with the policy underlying this criterion would require a trial court to believe that a reasonable appellate judge could vote for reversal of the challenged order." Note, *supra*, 88 Harv. L. Rev. at 624. Unless an order triggers this degree of doubt in the mind of a trial judge, certification of the order is improper. Furthermore, V.R.A.P. 5(b) allows an appeal from an order denying certification, thereby assuring that the doubtfulness of trial court rulings can be evaluated by an independent arbiter after the denial of certification. See V.R.A.P. 5.

The bare recitation of this criterion by the trial court in this case provided us with little guidance on why there was "substantial ground for disagreement" with the trial court's order. The trial court should have independently evaluated the doubtfulness of its order before certifying this appeal.

## III.

In *Castle* v. *Sherburne Corp.*, *supra*, this Court held that an appeal had been improvidently granted under V.R.A.P. 5(b). Nevertheless, we found good cause in that case to suspend the requirement of V.R.A.P. 5, and exercised our authority under V.R.A.P. 2 to answer the certified questions. See *Castle* v. *Sherburne Corp.*, *supra*, 141 Vt. at 164–65, 446 A.2d at 353–54. The instant appeal, however, stands worlds apart from the *Castle* case.

*Castle*, of course is a narrow exception to V.R.A.P. 5 that resulted from the unique situation in that appeal. There, the pattern of counsel-induced delay combined with the simplicity of the legal issues at hand, and impelled plenary consideration of the certified questions. See *id.* at 165, 446 A.2d at 354. To the contrary, every fiber of this case militates against suspending our rules and answering the certified questions. Even at this stage, a substantive reso-

lution of these questions probably would not save substantial time. More important, the hazards of deciding this appeal in a factual vacuum counsel against a suspension of the rules. In the words of Mr. Justice Jackson, this case "present[s] a treacherous record for deciding issues of far-flung import." *Kennedy* v. *Silas Mason Co.*, 334 U.S. 249, 257 (1948). Consequently, we decline to suspend the operation of V.R.A.P. 5 in this case.

*The appeal is dismissed.*