STATE OF VERMONT

ENVIRONMENTAL COURT

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
|                                      | } |                          |
| In re: Morgan Meadows/Black Dog Realty | } |                          |
|     Subdivision Act 250 Permit       | } | Docket No. 267-12-07 Vtec |
|     (Appeal of Tidwell, et al.)      | } |                          |
|                                      | } |                          |

Decision and Order on Motion for Reconsideration and

Motion for Interlocutory Appeal

Appellants Michael M. and Terri A. Tidwell appealed from a decision of the District 2 Environmental Commission issuing an Act 250 Land Use Permit to Appellee-Applicant Black Dog Realty, LLC for a subdivision project on Hunt Hill Road in the Town of Windsor.  The Tidwell appeal raises issues under Act 250 Criteria 5, 6, 7, 8, 9(A), 9(B), and 9(K).  Additional Appellant Craig Pease filed an appeal within the time allowed under V.R.E.C.P. 5(b)(2).  The Pease appeal raises issues under Act 250 Criteria 1, 2, 3, 5, 7, 8, 9(A), 9(B), 9(J), and 9(K).  Additional Appellant Vermont Agency of Agriculture, Food, and Markets withdrew its appeal, solely related to Act 250 Criterion 9(B), on April 16, 2008.

Appellants Tidwell have appeared and represent themselves.  Appellant Craig Pease is represented by Stephanie J. Kaplan, Esq. and Gerald R. Tarrant, Esq.  The Land Use Panel of the Natural Resources Board (Land Use Panel) is represented by John H. Hasen, Esq.  Appellee-Applicant Black Dog Realty, LLC is represented by Jonathan L. Springer, Jr., Esq. and Lawrence G. Slason, Esq.  The Town of Windsor is represented by J. Christopher Callahan, Esq.  The Southern Windsor County Regional Planning Commission, has appeared through its Executive Director, Thomas Kennedy. The Vermont Natural Resources Council (VNRC) is represented by Jon Groveman, Esq. and the Conservation Law Foundation (CLF) is represented by Sandra E. Levine, Esq.; each

1

organization moved to intervene in this appeal.

Procedural History

In August of 2006, Appellee-Applicant applied for an Act 250 land use permit for a subdivision project on a 55.5-acre property described as the former Time 'L Tell Farm on Hunt Hill Road in the Town of Windsor. At the time of application, the project consisted of a 41-lot subdivision with a maximum of 90 single- and multi-family housing units. The District 2 Environmental Commission (District Commission) issued a written decision granting the permit, subject to conditions, in November of 2006.

Appellant Pease appeared before the District Commission and was granted party status except as to Criterion 9(B). Appellant Pease appealed that denial of party status to this Court in the above-captioned appeal.

An on-the-record appeal from a related municipal decision had also been filed with this Court in Docket No. 156-7-07 Vtec, and the parties to both matters had agreed that after certain party status issues would be resolved in the above-captioned Act 250 appeal, it would be placed on inactive status until the resolution of the municipal appeal. After efforts to produce an adequate record in the municipal appeal had failed, the parties agreed to its dismissal and remand to the development review board, which the Court ordered on November 17, 2008.

In a Decision and Order in the above-captioned Act 250 appeal issued on May 1, 2008, this Court granted Appellant Pease party status under Criterion 9(B), and addressed the motions to intervene filed by VNRC and CLF. The Court denied CLF and VNRC party status under Criterion 9(B), but provided for these parties to request leave to participate as amici curiae pursuant to V.R.A.P. 29 and V.R.E.C.P. 5(a)(2).

The Land Use Panel moved for reconsideration of the Court's decision granting party status to Appellant Pease under Criterion 9(B); Appellee-Applicant joined in that motion on June 9, 2008. VNRC and CLF moved for interlocutory appeal of the Court's

denial of their party status pursuant to V.R.E.C.P. 5(k) and V.R.A.P. 5(b). VNRC and CLF also moved to postpone the schedule for them to request amicus curiae status to 15 days after a final decision on the interlocutory appeal has been issued.

Motion for Interlocutory Appeal

Under V.R.E.C.P. 5(k), this Court may rule on requests for interlocutory appeal. V.R.A.P. 5 requires that, to grant a motion for interlocutory appeal, the Court must find that the order or ruling "involves a controlling question of law" about which "there is substantial ground for difference of opinion," and that "an immediate appeal may materially advance the termination of the litigation." V.R.A.P. 5(b)(1); see also In re Pyramid Co. of Burlington, 141 Vt. 294, 301 (1982); Sunset Cliff Homeowners Assoc., Inc. v. City of Burlington, et al., No. 198-8-06 Vtec, slip op. at 7 (Vt. Envtl. Ct., Dec. 4, 2006) (Durkin, J.).

The question of whether VNRC and CLF qualify for party status under Criterion 9(B) is a question of law, in that it is "capable of accurate resolution by an appellate court without the benefit of a factual record," In re Pyramid Co., 141 Vt. at 304, that is, in the present case, based solely on the affidavits presented by the moving parties. To be controlling, resolution of the question must have an immediate effect on the course of litigation and save resources for either the court or the litigants. Id. at 303. The question of VNRC's and CLF's party status is controlling because although as amici the two organizations could participate in the trial to the same extent as if they were intervenors, they would not have the standing to bring an appeal of the Court's final decision in this case, and would have to move for interlocutory appeal at that time to resolve their party status to determine if they could then bring an appeal of any decision on the merits.

The second requirement for interlocutory appeal is whether a reasonable appellate judge could reach a different result on the issue appealed. In re Pyramid Co.,

141 Vt. at 307.  Appeals from Act 250 decisions are relatively new in the Environmental Court, and this Court has not addressed organizational party status under Criterion 9(B) since the changes to the standing requirements for appeal.  In particular, whether the organizations' members meet the "particularized interest" requirement of 10 V.S.A. § 8502(7) is a question on which there is a substantial ground for difference of opinion.

An interlocutory appeal has the potential to materially advance the termination of the litigation when it may advance the ultimate termination of the case, including time spent on appeal.  In re Pyramid Co., 141 Vt. at 305.  Here, interlocutory review of CLF's and VNRC's party status will advance the ultimate termination of the case by avoiding relitigation if the organizations are granted party status.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that VNRC's and CLF's Motion for Interlocutory Appeal pursuant to V.R.A.P. 5(b) and V.R.E.C.P. 5(k) is hereby GRANTED.  VNRC's and CLF's motion regarding the timing of filing any requests for amicus curiae status is also GRANTED.  The organizations may file any such requests to participate in this Court's proceedings in this matter as amici curiae within 15 days of a final decision on the interlocutory appeal.  In the meantime, they may participate in any telephone conferences or pretrial proceedings.

Motions for Reconsideration of Appellant Pease's Party Status under Criterion 9(B)

Motions to reconsider should be used sparingly, and should not be used to repeat arguments that have been raised and rejected by the court in the prior decision. See, e.g., In re Bouldin Camp, No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007) (Wright, J).  In the present case, the interplay between the former Environmental Board's jurisprudence as to Criterion 9(B) party status and the changes to the provisions for standing in 10 V.S.A. §§ 6085(c)(1)(E) and 8502(7) warrants closer examination, as if it were "an intervening change in the controlling law."  In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.)

4

(citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0); see 10 V.S.A. §8504(m) (requiring the Court to give prior decisions of the Environmental Board "the same weight and consideration" as its own prior decisions).

Criterion 9(B) of Act 250, 10 V.S.A. § 6086(a)(9)(B), addresses the potential impacts of a project on "primary agricultural soils." An applicant must either demonstrate that the project "will not result in any reduction in the agricultural potential of the primary agricultural soils" on the project site, or, if the project will reduce the agricultural potential of primary agricultural soils on the site, must demonstrate that the project meets all four of the additional requirements contained in the subsections of Criterion 9(B).

Criterion 9(B)(i) requires that the proposed project "not significantly interfere with or jeopardize the continuation of agriculture or forestry on adjoining lands or reduce their agricultural or forestry potential." Criterion 9(B)(ii) allows the proposed development to proceed, other than in a designated growth center, only if the applicant does not own or control other lands "reasonably suited to the purposes" of the project. Criterion 9(B)(iii) requires, other than in a designated growth center, the use of "innovative land use design" and clustering to "minimize the reduction of agricultural potential" so that the remaining primary agricultural soils are "capable of supporting or contributing to an economic or commercial agricultural operation." Criterion 9(B)(iv) requires "suitable mitigation" to be provided for any reduction in the agricultural potential of the primary agricultural soils caused by the proposed project.

Under 10 V.S.A. § 6085(c)(1)(E), "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" is entitled to party status. 10 V.S.A. § 8504(a) allows "any person aggrieved by an act or decision of . . . a district commission" to appeal to the Environmental Court. A "person aggrieved" is defined by 10 V.S.A. § 8502(7) as "a person who alleges an injury to a particularized interest protected by [Act

5

250], attributable to an act or decision by a . . . district commission . . . that can be redressed by the environmental court or the supreme court." As this Court noted in its May 1, 2008 decision, at p. 5, "Appellant Pease has party status if he alleges an injury to a 'particularized interest' protected by Criterion 9(B), 'attributable to' the decision on appeal, that 'can be redressed' in this proceeding."

In the present motion, the Land Use Panel does not contest the existence of Appellant Pease's asserted injury or the particularity of his interests as an adjoining landowner.[1] The Land Use Panel does not claim that Appellant Pease's asserted injury is not attributable to the District Commission's decision, nor does it claim that the injury is not redressable by this Court. The sole issue in the present Motion for Reconsideration is whether the particularized interests Pease has asserted are protected by Criterion 9(B).

Appellant Pease identified the interests which he claims will be affected by the proposed subdivision and development both in his December 2007 party status filing, and in his response to the pending motion. First, he asserts an interest in preserving the working landscape and the agricultural character of his neighborhood. He values the character of the neighborhood, and claims that its historic settlement pattern, reflecting the compact settlement of Windsor Village surrounded by forests and farmland, will be disrupted by the project. He claims an interest in enjoying the pastoral view of the working farm that currently operates on the proposed project site and is visible from his adjoining house and property.

Appellant Pease also claims that his own agricultural operation on his property adjacent to the proposed project site, will be affected by the proposed project. His agricultural operation involves cultivation of "extensive heirloom vegetable, herb, and

---

[1] No party has challenged the party status with reference to Criterion 9(B) of Appellants Tidwell, who are also adjoining property owners and had been granted party status under Criterion 9(B) by the District Commission

6

berry gardens and an orchard;" he also raises heirloom poultry. He claims an interest in preserving the "agricultural community" created by his own small farm adjoining the larger one on the project property, and that his enjoyment of his property will be diminished if this community is destroyed. He asserts that the loss of the agricultural potential of the project property may affect other farming operations in the area to the extent that it may result in the loss of infrastructure that supports agriculture. Appellant Pease also asserts a personal professional interest in the preservation of the primary agricultural soils on the project site, as his work as a professor and scientist involved with teaching and research on rangeland grasses has been "informed by [his] close proximity to a working farm."

Appellant Pease has claimed at least two protectable interests under Criterion 9(B). First, he asserts a protectable interest in the resource protected by the language of 9(B) itself: the agricultural potential of primary agricultural soils on the proposed project site. Unlike the aesthetic issues discussed in the May 1, 2008 decision regarding the present character of the area, Appellant Pease's interests in preserving the potential for the future working landscape and agricultural character of the area are protectable under Criterion 9(B). Loss of the agricultural potential of the primary agricultural soils on the proposed project property would preclude the property's use for agriculture in the future and would thus contribute to the loss of the working landscape and the reduction of the agricultural character of the area over time. As the loss of the resource protected by Criterion 9(B) would directly affect Appellant Pease's particularized[2]

---

[2] A neighbor's particularized interests in preserving the potential for a working landscape or the continued agricultural character of the area in which he or she lives, protectable under Criterion 9(B), are distinct from those policy interests in avoiding sprawl, encouraging the production of locally-grown food, and promoting farming in Vermont generally, which are not protectable because they are not particularized. See In re Mt. Anthony Union High Sch. Dist. #14, Permit # 8B0552-EB (Interlocutory), Mem. of Decision, at 6–7 (Vt. Envtl. Bd. Jan. 31, 2002); In re Agency of Transp. (Bennington

7

interests, those interests are protectable under Criterion 9(B).

This analysis is consistent with this Court's decision in <u>In re Eastview at Middlebury, Inc.</u>, No. 256-11-06 Vtec, slip op. at 2–3 (Vt. Envtl. Ct. Feb. 15, 2008) (Durkin, J.) (stating that petitioner's party status under Criterion 9(B) "flows from her proximity to the project site and the adjoining agricultural lands"), appeal filed Apr. 24, 2008. It also reflects the former Environmental Board's actual practice regarding neighbors' party status under Criterion 9(B). <u>E.g.</u>, <u>In re The Van Sicklen Ltd. P'ship</u>, Permit # 4C1013R-EB, Mem. of Decision, at 6–7 (Vt. Envtl. Bd. June 8, 2001) (granting party status to group of abutters and neighbors who established an interest in maintaining agricultural operations and preserving the rural character of the area); <u>In re John A. Russell Corp.</u>, Permit # 1R0849-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 13, 2000) (granting party status to neighbors and abutters who established an interest in maintaining agricultural operations on primary agricultural soils and preserving area farming operations); see <u>In re Spear St. Assocs.</u>, #4C0489-1-EB, Mem. of Decision, at 3 (Vt. Envtl. Bd. Apr. 4, 1984) ("'[T]he development or subdivision of primary agricultural soils' . . . can have a direct impact on the property interests of farmers and non-farmers alike." (quoting 10 V.S.A. § 6086(a)(9)(B))).

The second protectable interest Appellant Pease asserts is his interest in preserving his own adjoining agricultural operation. Because primary agricultural soils on the project site will be impacted by the development, the subsections of Criterion 9(B) are triggered. Under subsection (i) of Criterion 9(B), agricultural operations on lands adjoining the project site are protected from substantial interference or jeopardy. Unlike under subsection (iii), the language of the statute does not require that such neighboring operations be "commercial" or "economic."

Bypass), Decl. Ruling # 349, Findings of Fact, Concl. of Law, & Dism. Order, at 6–8 (Vt. Envtl. Bd. Nov. 12, 1997); <u>In re Circumferential Highway</u>, Permit # 4C0718-EB, Mem. of Decision & Dism. Order, at 1–2 (Vt. Envtl. Bd. Sept. 25, 1989).

Appellant Pease has standing to show whether the project will substantially interfere with his agricultural operation by disrupting the currently existing local agricultural community.  He has a particularized interest in maintaining this agricultural community because its infrastructure supports his own agricultural operation.  Appellant Pease has standing to show whether the disruption of this agricultural community will injure him by diminishing his use and enjoyment of his land, that is, whether the loss of agricultural potential in one farm in an area will tend to lead to the demise of more farms over time.  See, e.g., In re Nile & Julie Duppstadt, Permit # 4C1013-EB (Corrected), Findings of Fact, Concl. of Law, & Order, at 19 (Vt. Envtl. Bd. Apr. 30, 1999) (agricultural uses are often incompatible with residential uses; noise, odors, and dust associated with agricultural uses can disturb adjacent residents); In re Nile & Julie Duppstadt., Permit # 4C1013-EB (Corrected), Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 25, 1998) (children, dogs, and cars associated with residential uses can create risks for livestock and crops).

Environmental Board precedent supports the finding that an adjoining landowner with an agricultural operation is entitled to party status under Criterion 9(B).  E.g., In re John A. Russell Corp., Permit # 1R0849-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 13, 2000) (granting 9(B) party status to adjoining landowner whose land was regularly hayed); In re Nile & Julie Duppstadt, Permit # 4C1013-EB (Corrected), Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 25, 1998) (granting 9(B) party status to adjoining landowner who operated a dairy farm); cf. In re Town of Milton, Permit # 4C0046-5-EB, Mem. of Decision, at 3 (Vt. Envtl. Bd. Apr. 14, 2000) (granting 9(B) party status to adjoining landowner without any discussion of the protectable interests alleged); In re Circumferential Highway, Permit # 4C0718-EB, Mem. of Decision & Dism. Order, at 2 (Vt. Envtl. Bd. Sept. 25, 1989) (same).

The fact that food produced by Pease's agricultural operation is not sold, but instead is consumed only by his family, is of no consequence.  Criterion 9(B)(i) does not

require that the agriculture on adjoining lands be "economic or commercial" in order to be protected. Even under Criterion 9(B)(iii), the Land Use Panel's Training Manual interprets an 'economic' agricultural operation as having a lower threshold than a 'commercial' one, stating that "a backyard vegetable garden can have economic value to a household, even if the produce is not sold commercially." Act 250 Training Manual at 4, available at http://www.nrb.state.vt.us/lup/publications/manual/9bfinal.pdf.

As Appellant Pease has established that he has particularized interests, protected by Criterion 9(B), that are redressable by this court, he is entitled to party status under Criterion 9(B). Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Land Use Panel's Motion for Reconsideration is DENIED.


A telephone conference has been scheduled (see enclosed notice) to discuss the appropriate scheduling for this appeal in light of the remand of the municipal appeal.


Done at Berlin, Vermont, this 1st day of December, 2008.


_____
Merideth Wright
Environmental Judge