STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re Montpelier WWTF Discharge Permit | } | Docket No. 22-2-08 Vtec |
|  | } |  |

## Decision on Request for Interlocutory Appeal

This Court's June 30, 2009 Decision on Cross-Motions for Summary Judgment ("Decision") granted summary judgment in favor of Appellant Conservation Law Foundation ("CLF"). Specifically, we held that the permit that the Vermont Agency of Natural Resources ("ANR") issued to the Montpelier Wastewater Treatment Facility ("WWTF" or "Facility") was invalid, and therefore vacated that permit. We then remanded the appeal to ANR to engage in a site-specific and time-specific analysis regarding the appropriate phosphorus discharge level for the Facility: "where ANR is yet to engage at all in the analysis that the Clean Water Act requires, the proper recourse is to remand the case to ANR to engage in that analysis in the first instance." Decision at 22–23 (citing In re Stormwater NPDES Petition, 2006 VT 91, ¶ 30, 180 Vt. 261.

Given that we remanded this case, rather than issuing a final judgment, ANR and the Water Resources Panel of the Vermont Natural Resources Board ("Water Panel") have filed a joint motion requesting permission to take an interlocutory appeal to the Vermont Supreme Court. See generally In re Cliffside Leasing Co., 167 Vt. 569 (1997) (holding that a party must request interlocutory review before the Vermont Supreme Court can hear an appeal of a non-final Environmental Court decision).

No party has opposed the joint motion that was filed by ANR and the Water Panel. Rather, the City of Montpelier ("City") has filed a memorandum in support of that motion, and CLF has filed a brief statement indicating that it takes no position on the request for interlocutory review.

We evaluate this unopposed motion under Rule 5(b)(1) of the Vermont Rules of Appellate Procedure. See V.R.E.C.P. 5(a)(2) (noting that applicable Vermont Rules of Appellate Procedure "govern all proceedings" before this Court).[1] Rule 5(b)(1) states three requirements for interlocutory review: (1) the order or ruling must "involve[] a controlling question of law";

---

[1] Because the pending motion only requests interlocutory review under Rule 5(b)(1), we do not reach whether interlocutory review would be appropriate under Rule 5.1.

1

(2) there must be "substantial ground for difference of opinion" regarding that question; and (3) "an immediate appeal may materially advance the termination of the litigation."

Although the Supreme Court has noted that there is only "a narrow class of cases in which interlocutory review is . . . advisable," In re Pyramid Co. of Burlington, 141 Vt. 294, 301 (1982), we find this to be a situation where interlocutory review is appropriate. In particular, we find that the Decision at issue here meets all three of the requirements listed in V.R.A.P. 5(b)(1).

## I.    Controlling Question of Law

The Decision "involves a controlling question of law" regarding the federal Clean Water Act and its implementing regulations. V.R.A.P. 5(b)(1). This dispute centers on the proper process for determining a wastewater treatment facility's permit limit for a pollutant that will discharge into an impaired waterway. In 2002, the Lake Champlain Phosphorus Total Maximum Daily Load ("TMDL") set maximum limits for phosphorus discharges into all of Lake Champlain from both point and non-point sources. The Champlain TMDL also established specific maximum levels of phosphorus pollution (referred to as wasteload allocations) that could be discharged from each identified point source, including the Montpelier WWTF. Six years later, when ANR granted a new discharge permit for the Montpelier WWTF, ANR simply imported the maximum wasteload allocation established in the Champlain TMDL—without further analysis—as the amount of phosphorus that the Facility could discharge from 2008 through 2013.[2] ANR and the Water Panel maintain that as a matter of law this process in all cases complies with the federal Clean Water Act and its implementing regulations. We held otherwise in our Decision:

> In summary, we find that ANR must engage in an analysis, prior to the issuance of the discharge permit applied for here, to determine whether the wasteload allocation in the [Lake] Champlain [Phosphorus] TMDL is protective enough of state water quality standards to be adopted as a [Water Quality Based Effluent Limitation] or whether a more stringent limitation is required [by the federal Clean Water Act and its implementing regulations]. We conclude that such an application review process is required as a matter of law, so that a [Water Quality Based Effluent Limitation] meets the five-year limitation on permits required by 33 U.S.C. § 1342(b)(1)(B), and so that a [Water Quality Based Effluent Limitation] is "consistent with the assumptions and requirements of any available wasteload allocation" in an approved TMDL, pursuant to 40 C.F.R. § 122.44(d)(1)(vii)(B).

---

[2]  The Clean Water Act limits the term of each permit to no more than five years. 33 U.S.C. § 1342(b)(1)(B).

Decision at 22.

On this basis, we denied requests from ANR and the Water Panel to grant summary judgment in their favor, and we granted summary judgment in favor of CLF and held that the permit that ANR issued to the Montpelier WWTF was invalid and therefore void. Id. We then remanded the appeal to ANR to engage in a site-specific and time-specific analysis of the proper phosphorus discharge limit for the ensuing five year term. Id. at 22–23.

As we noted in our Decision, in interpreting the Clean Water Act and its implementing regulations, the Court was "presented with a purely legal question" involving "statutory interpretation." Id. at 3. Thus, this is not a situation where the "benefit of factual findings" would aid in reaching a final determination on the legal issues addressed in the Decision. In re Pyramid, 141 Vt. at 301. Unlike In re Pyramid, where the controlling nature of certain legal questions was "completely dependent upon the factual record developed at trial," the purely legal issues resolved by the Decision here are "capable of accurate resolution by an appellate court without the benefit of a factual record." Id. at 304.

Further, the legal issues addressed in the Decision are controlling because "reversal would have a substantial impact on the litigation, either by saving substantial litigation time, or by significantly narrowing the range of issues, claims, or defenses at trial." Id. at 303. If the Vermont Supreme Court were to hold that ANR and the Water Panel are correct that the process that ANR followed here—as a matter of law—always complies with the Clean Water Act and its implementing regulations, it would either end this litigation or at least "significantly narrow[] the range of issues . . . at trial." Id. Indeed, this Court dedicated a large part of our Decision to pointing out just some of the potential issues regarding whether the permit limitation here is "consistent with the assumptions and requirements of any available wasteload allocation" in an approved TMDL, as is required by 40 C.F.R. § 122.44(d)(1)(vii)(B). See Decision at 14–19. Those issues would all go away if the Supreme Court were to reverse this Court and hold as a matter of law that any permit limitation that comes directly from a wasteload allocation in all cases meets the requirements of 40 C.F.R. § 122.44(d)(1)(vii)(B).

## II.    Substantial Grounds for Difference of Opinion

Although subsequent reviews of our Decision have only reinforced our belief of its soundness, we agree that a "substantial ground for difference of opinion" exists regarding these legal issues. V.R.A.P. 5(b)(1). ANR and the Water Panel are correct that it appears as if no

3

court or other adjudicatory body has addressed the exact issues presented in this appeal. These are difficult issues of statutory interpretation, and they require an in-depth analysis of various provisions of federal law and the underlying intent of those provisions. Further, to the extent that the former Vermont Water Resources Board addressed a similar issue in 2004, it reached a different outcome. See Re: Village of Enosburg Falls, No. WQ-03-03, Memorandum of Decision (Apr. 21, 2004), available at http://www.nrb.state.vt.us/wrp/decisions/wrbdecisions/2004/wq-03-03mod.pdf. We therefore agree that "reasonable appellate judge[s] could vote for reversal of the challenged order." In re Pyramid, 141 Vt. at 307 (quotation omitted).

### III.  Material Advancement of the Litigation

The requirement in Rule 5(b)(1) that "an immediate appeal may materially advance the termination of the litigation" presents a more difficult issue, but we nonetheless conclude that this requirement is met. Unlike In re Pyramid, where "neither affirmance nor reversal offered much prospect of advancing the ultimate termination of this litigation," 141 Vt. at 306, the ultimate resolution of this appeal at least has the prospect of being advanced by a final ruling on the legal issues addressed in the Decision.

We note that this issue is difficult because we doubt that interlocutory review will put an end to the litigation in this matter. The parties in this appeal have staked out relatively disparate positions: ANR, the Water Panel, and the City believe that the Montpelier WWTF is entitled to a discharge permit that allows more than double the amount of phosphorus that this Facility has historically discharged in any given year, while CLF believes that future permits may only allow a net zero discharge of phosphorus. Each side believes that its position is the only proper interpretation of the Clean Water Act and its implementing regulations. Thus, if the Supreme Court affirms our Decision, litigation might continue once ANR completes the analysis that has been ordered—whether it is CLF appealing because the permit limitation is not stringent enough, or whether it is the City appealing because it is too stringent. If, on the other hand, the Supreme Court reverses our Decision, CLF could still bring further litigation and argue that even if not required by law, ANR (and this Court exercising de novo review) should exercise its discretion to impose more stringent limitations than the minimum requirements of the Clean Water Act. See Decision at 7 (noting that the EPA has explicitly stated that "agencies like ANR can impose more stringent permit limitations where needed" (citing In re City of Moscow, Idaho, NPDES Appeal #00-10, 10 E.A.D. 135, 148 (EPA Envtl. Appeals Bd. July 27, 2001))).

4

In other words, it is unlikely that this appeal, even if allowed to proceed to our Supreme Court, will mark the end of litigation concerning this legal issue. That said, interlocutory review of the Decision issued here certainly has the possibility of materially advancing this specific litigation. See V.R.A.P. 5(b)(1). For instance, if the Supreme Court reverses our Decision, it might end this litigation altogether. That possibility in itself suffices to meet the third requirement of Rule 5(b)(1). Further, given that no party to this appeal has objected to the request for interlocutory review, it appears that the parties themselves recognize that interlocutory review could expedite a final resolution of this matter.

In addition, the Court is aware that our Decision has ramifications not only for the Montpelier WWTF, but also potential ramifications for a number of other wastewater treatment facilities that discharge into the Lake Champlain Basin. In fact, this Court already has at least one other appeal that we have concluded is best stayed pending the final outcome of this appeal. See In re St. Albans Waste Water Treatment Facility (Permit #3-1279), No. 253-10-08 Vtec. We expect that many more appeals concerning other individual wastewater treatment facilities could follow until a final decision is reached regarding ANR's duties under the Clean Water Act and its implementing regulations. A final decision regarding the legal issues that were addressed in our Decision in this appeal would expedite the resolution of those appeals as well.

## Conclusion and Questions Certified for Review

For all the reasons more fully discussed above, we **GRANT** the request from ANR and the Water Panel to allow interlocutory review of this Court's June 30, 2009 Decision. We hereby certify the following legal questions for review by our Supreme Court:

1.      Does the Clean Water Act's five-year limitation on permits in 33 U.S.C. § 1342(b)(1)(B) preclude a state agency from basing a subsequent wastewater discharge permit solely upon a maximum wasteload allocation that is more than five years old?

2.      Does 40 C.F.R. § 122.44(d)(1)(vii)(B) require any further analysis of the 2002 Champlain TMDL wasteload allocation for the Montpelier Facility to determine whether a more stringent limitation is needed in a future permit to meet the federal Clean Water Act's requirement of protecting state waters, pursuant to state-established water quality standards?

5

Done at Berlin, Vermont, this 10th day of August 2009.


_____
Thomas S. Durkin, Environmental Judge